## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| WELLCOMEMAT, LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>AYLO HOLDINGS S.à r.l., AYLO FREESITES LTD., AYLO PREMIUM, LTD., 9219-1568 QUEBEC, INC., and JARROD BELTRAN,<br><br>                    Defendants. | C.A. No. 2:23-cv- 483<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement in which Plaintiff WellcomeMat, LLC ("WellcomeMat") makes the following allegations against Aylo Holdings S.à r.l. f/k/a MindGeek S.à r.l. ("Aylo S.à r.l."); Aylo Freesites, Ltd. f/k/a MG Freesites, Ltd. ("Aylo Freesites"); Aylo Premium, Ltd. f/k/a/ MG Premium, Ltd. ("Aylo Premium"); 9219-1568 Quebec, Inc. ("9219-1568 Quebec") (with Aylo S.à r.l., Aylo Freesites, and/or Aylo Premium, "MindGeek"); and Jarrod Beltran ("Beltran") (collectively, "Defendants").

## BACKGROUND

1.      WellcomeMat—a start-up company consisting of three tech-savvy individuals collaborating in the garage of founder Christian Sterner—revolutionized the market for online video distribution.

2.      Sterner and his co-founders, Phil DiGiulio and Haider Zainy, invented and obtained foundational patents covering methods and systems for managing, organizing, and presenting video data in certain specific ways.

3.      In particular, as reflected in U.S. Patent No. 8,307,286 (the "'286 Patent"), WellcomeMat's founders invented methods and systems for video chaptering that, for example, enables individuals to upload video files to an online video platform and add, modify, and delete video cue point information—i.e., particularly indexed positions or tags—associated with those files, and further enables viewers to select and utilize such video cue points to navigate to and stream desired content.

4.      MindGeek has been aware of the '286 Patent—and its need to license it—for some time but has decided to infringe it anyway.

5.      For example, in September 2020, MindGeek petitioned for *inter partes* review ("IPR") of U.S. Patent No. 9,965,780 (the "Scorpcast Patent")—a patent that is owned by Scorpcast, LLC and was the subject of infringement litigation against MindGeek in two federal district courts. MindGeek claimed that the Scorpcast Patent was invalid in view of WellcomeMat's application for U.S. Patent No. 8,170,395 (the "'395 Patent"), which is related to the '286 Patent. During those proceedings, MindGeek contacted, and eventually subpoenaed, WellcomeMat for information related to both the '395 Patent and the '286 Patent.

6.      While complying with MindGeek's informational requests and demands, WellcomeMat put MindGeek on notice that MindGeek was violating the '286 Patent through the video chaptering features of its popular adult entertainment platform, Pornhub. WellcomeMat, in fact, offered MindGeek an opportunity to negotiate a license agreement for the '286 Patent.

7.      Despite WellcomeMat's efforts, MindGeek has not obtained a license or any other non-assertion rights to the '286 Patent.

8.      By offering video platforms that violate the '286 Patent on its popular adult entertainment website, MindGeek has induced Pornhub content partners, like Defendant Beltran,

to directly violate the '286 Patent when uploading and categorizing videos with "Action Tags" via the accused Pornhub platform.

9.     WellcomeMat thus files this suit to protect its valuable intellectual property rights.

## PARTIES

10.     Plaintiff WellcomeMat is a limited liability company whose principal place of business is Boulder, Colorado. It specializes in real estate video marketing.

11.     Defendant Aylo S.à r.l. is a foreign entity organized and existing under the laws of Luxembourg and conducting business in the United States, including in this District, through several foreign and American subsidiary companies. Aylo S.à r.l. owns, either directly or indirectly, several adult entertainment brands, including Pornhub, Pornhub Premium, YouPorn, YouPorn Premium, RedTube, Redtube Premium, Tube8, Thumbzilla, ModelHub, XTube, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com. https://www.aylo.com/brands/.[1]

12.     As Mr. Andreas Alkiviades Andreou stated in a signed declaration submitted under penalty of perjury in *Fleites v. MindGeek S.A.R.L., et al.*, No. 21-4920 (C.D. Cal. May 23, 2022), ECF No. 139-3 ("Andreou Decl."), on behalf of all four MindGeek defendants in this case, Aylo S.à r.l. "is without any employees or operations of its own." *See* Andreou Decl. ¶ 14. Instead, it conducts all of its operations through foreign and American subsidiary companies, including Aylo Freesites, Aylo Premium, and 9219-1568 Quebec, of which Aylo S.à r.l. is the "ultimate parent corporation." *See id.* ¶ 15.

---

[1] While the depictions reproduced below are redacted for explicit content, some of the hyperlinked webpages, which cannot be redacted, contain explicit content.

13.     Defendant Aylo Freesites (d/b/a Pornhub) is a company incorporated in the Republic of Cyprus and conducting business in the United States, including in this District. As reflected in Pornhub's Terms of Service (https://www.pornhub .com/information/terms), Aylo Freesites purports to own and operate one of the most popular adult entertainment websites in the world, Pornhub.com. Aylo Freesites also operates other popular adult entertainment websites, including Pornhub Premium, YouPorn, YouPorn Premium, RedTube, RedTube Premium, Tube8, Thumbzilla, ModelHub, and XTube.

14.     Upon information and belief, Aylo Freesites is predominantly under the control of and operated by directors, officers, and employees working in Aylo S.à r.l.'s offices in Canada, as well of those of various affiliated companies in the United States, with little business operations being conducted within the Republic of Cyprus.

15.     Defendant Aylo Premium is a company incorporated in the Republic of Cyprus and conducting business in the United States, including in this District. Aylo Premium purports to own and operate several popular adult entertainment websites, including Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com.

16.     Upon information and belief, Aylo Premium is predominantly under the control of and operated by directors, officers, and employees working in Aylo S.à r.l.'s offices in Canada, as well of those of various affiliated companies in the United States, with little business operations being conducted within the Republic of Cyprus.

17.     As noted, both Aylo S.à r.l., Aylo Freesites, and Aylo Premium were formerly known, respectively, as MindGeek S.à r.l., MG Freesites, Ltd., and MG Premium, Ltd. On August 17, 2023, MindGeek announced its corporate rebrand for entities operating under the MindGeek and MG brands. https://www.aylo.com/newsroom/mindgeek-rebrands/. That same day, Aylo

Freesites and Aylo Premium filed certificates of change of name with the appropriate authorities in Cyprus. Upon information and belief, around the same time, Aylo S.à r.l. filed similar papers with the appropriate authorities in Luxembourg.

18.     Defendant 9219-1568 Quebec is a company organized and existing under the laws of the Province of Quebec with its principal place of business in Montreal, Canada. 9219-1568 Quebec is a service company that employs the individuals responsible for the technical operations of Pornhub and Aylo S.à r.l.'s other accused adult entertainment websites. *See* Andreou Decl. ¶¶ 8, 32.

19.     For all relevant purposes herein, Aylo S.à r.l., Aylo Freesites, Aylo Premium, and 9219-1568 Quebec are one and the same, and thus Aylo S.à r.l. is vicariously liable for the acts of Aylo Freesites, Aylo Premium, and 9219-1568 Quebec, which can be imputed to Aylo S.à r.l., because Aylo Freesites, Aylo Premium, and 9219-1568 Quebec are agents and the alter egos of Aylo S.à r.l.

20.      Aylo S.à r.l. is the ultimate parent corporation of Aylo Freesites, Aylo Premium, and 9219-1568 Quebec and has no employees or operations of its own. Further, while Aylo Freesites and Aylo Premium purport to technically own and operate Pornhub and other adult entertainment websites, all such technical operations actually are managed, controlled, and conducted by 9219-1568 Quebec from its Canadian offices.

21.     In addition, Aylo S.à r.l. holds itself out to the public as a single global company operating under the Aylo brand for the benefit of the accused websites. https://www.aylo.com/. To that end, the four MindGeek entities share offices (https://www.aylo.com/contact/) and members of their boards of directors, which ensures that common members maintain control over all the MindGeek entities (Andreou Decl. ¶¶ 15, 19, 26, 35). Further, the MindGeek entities share

executives and management teams to develop and distribute the infringing platforms described below. In doing so, the MindGeek entities enjoy revenues from sales of accused platforms by related entities. And the MindGeek entities conduct business with customers through common websites, including Aylo.com and Pornhub.com, which allows customers to view MindGeek's content, utilize the infringement platforms described below, and obtain technical support. Thus, the MindGeek entities, including Aylo S.à r.l., Aylo Freesites, Aylo Premium, 9219-1568 Quebec, and other affiliated entities, are a closely coordinated web of companies that carry out a joint strategy to use and deploy technology at the heart of the '286 Patent.

22.     This complexity is no accident. In an effort to hide its operations and escape liability for various well publicized shortcomings, Aylo S.à r.l. has incorporated dozens of subsidiaries and related companies around the world, the details of which are unknown to Plaintiff at this time, and has changed their names several times over the past fifteen years. For example, directly or indirectly, one or more of Aylo S.à r.l., Aylo Freesites, Aylo Premium, and 9219-1568 Quebec MindGeek wholly owns and controls at least four companies incorporated in the State of Delaware with corporate offices in California at the same address of 21800 Oxnard Street, Suite 150, Woodland Hills, CA 91367: Aylo Global Entertainment Inc., Aylo Billing US Corp., Aylo Holdings USA Corp., and Aylo USA Incorporated. On information and belief, one or more of Aylo S.à r.l., Aylo Freesites, Aylo Premium, and 9219-1568 Quebec Aylo S.à r.l. contracts with and/or otherwise uses these entities to facilitate the receipt of monies and other payments related to Pornhub and the other infringing adult entertainment websites identified in this Complaint.

23.     Defendant Jarrod Beltran (d/b/a Jarrod from Texas) is an individual domiciled in Lewisville, Texas. Beltran is a content partner in Pornhub's "Model Program" and uploads various

6

video content onto the Pornhub website using one or more of MindGeek's infringing platforms described below.

## JURISDICTION AND VENUE

24.     This action arises under the patent laws of the United States, Title 35 of the United States Code.

25.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

26.     This Court has personal jurisdiction over Aylo S.à r.l. because, directly or through its intermediaries, including Aylo Freesites, Aylo Premium, 9219-1568 Quebec, it has committed acts within Texas giving rise to this action and/or has established minimum contacts with Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

27.     Specifically, during the infringing period, Aylo S.à r.l., directly or through its intermediaries, including Aylo Freesites, Aylo Premium, and 9219-1568 Quebec, has placed one or more infringing products into the stream of commerce through the internet with the knowledge and/or understanding that such products were being utilized for sale in Texas.

28.     For example, just last month, Aylo Freesites cited its extensive contacts with the State of Texas to support a suit for injunctive relief against Texas officials in the United States District Court for the Western District of Texas. In particular, Aylo Freesites and other plaintiffs claimed that Texas law violates the First Amendment by requiring them, as a condition of doing business in the State, to verify that their visitors are at least eighteen years old and to display on their sites a public health warning. They claimed that those measures would irreparably harm "the goodwill of their Texan customers," going so far to claim that they hold a "protected property right

in the goodwill of Texan viewers." Compl. ¶¶ 5, 64, *Free Speech Coalition, Inc., et al. v. Colmenero, et al.*, No. 23-917 (W.D. Tex. Aug. 4, 2023), ECF No. 1.

29.     In addition, Aylo S.à r.l., including through Aylo Freesites, Aylo Premium, and 9219-1568 Quebec, closely analyzes its Texas market, quantifying the top search terms of its Texan customers on Pornhub (https://www.pornhub .com/insights/2022-year-in-review), the average time those Texan customers spend on that site, and the average number of pages they visit during that time (https://www.pornhub .com/insights/the-united-states-duration-nation).

30.     The same sources thus demonstrate that Aylo S.à r.l., including through Aylo Freesites, Aylo Premium, and 9219-1568 Quebec, causes Texan viewers to watch video content on Pornhub using one or more platforms, which has induced conduct that infringes the '286 Patent.

31.     In addition, through Pornhub's "Content Partner Program," which pays content partners "the highest rate per view in the industry" for uploading video content on the site (https://www.pornhub .com/partners/cpp), and through Pornhub's "Model Program," in which models can make "upwards of $40,000 a month" (https://help.pornhub .com/hc/en-us/categories/4419836208531-Model-Program), Aylo S.à r.l., including through Aylo Freesites, Aylo Premium, 9219-1568 Quebec, and the other Aylo entities, directly or indirectly have induced Texan content partners to upload video content to Pornhub and categorize such content with "Action Tags" using one or more platforms, described below, in a manner that infringes the '286 Patent (https://help.pornhub .com/hc/en-us/articles/4419860542483-Video-Tags).

32.     As just one of many examples, MindGeek has partnered with a content partner who uploads videos to its Pornhub website under the tag, FitwifeJewels. FitwifeJewels represents on Pornhub and Twitter that she resides, and uploads and categorizes content, in Texas. In doing so,

FitwifeJewels has used one or more platforms, described below, in a manner that infringes the '286 Patent.

33.    Defendant Beltran is another of many Texan content partners. For example, through Pornhub's Model Program, Beltran uploads and categorizes video content on Pornhub from Lewisville, Texas, under the tag, Jarrod from Texas, using one or more platforms, described below, in a manner that infringes the '286 Patent.

34.    Thus, this Court has personal jurisdiction over Beltran because he has committed acts within Texas giving rise to this action and/or has established minimum contacts with Texas such that the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

35.    For the same reasons that this Court has personal jurisdiction over Aylo S.à r.l., this Court has personal jurisdiction over its agents and alter egos, Aylo Freesites, Aylo Premium, and 9219-1568 Quebec.

36.    Because this Court has personal jurisdiction over Aylo S.à r.l., Aylo Freesites, Aylo Premium, and 9219-1568 Quebec—four foreign corporations—venue is proper pursuant to 28 U.S.C. § 1391(c)(1).

37.    Venue is proper over Beltran pursuant to 28 U.S.C. § 1400(b) because he resides within this judicial district.

## SINGLE ACTION

38.    This suit is commenced against Defendants pursuant to 35 U.S.C. § 299 in a single action because (a) a right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering

for sale, and/or selling of the same accused platforms or processes and (b) questions of fact common to all Defendants will arise in the action.

39.     Defendants offer, use, and/or sell the same platforms accused in this action, including because, as alleged below, each Defendant hosts and/or uploads for sale video content on Pornhub that use the methods recited in the '286 Patent.

## WELLCOMEMAT'S STORY

40.     Formally founded in July 2006, WellcomeMat is a software company that focuses on real estate video marketing. Though the company would eventually revolutionize the market for online video distribution, it took years for WellcomeMat to take off.

41.     Christian Sterner—WellcomeMat's original founder—grew interested in online video distribution in 1999, while working his first job out of college. At that time, the Internet was experiencing rapid growth, but online video distribution was lagging.

42.     Sterner sought to investigate why. In or around 2002, for example, Sterner contacted a real estate broker in New York City who gained notoriety for meeting prospective buyers to show them tape recordings of various listings. Sterner offered the broker a more efficient model—upload those recordings online to save time on individual meetings. Satisfied with his own system, the broker declined Sterner's suggestion. That is when Sterner came up with WellcomeMat.

43.     Initially, Sterner and co-founders DiGiulio and Zainy operated WellcomeMat out of the "WellcomeMat Global Headquarters"—an affectionate name for Sterner's garage. Equipped with a few computers, WellcomeMat set out to compete with far bigger and better funded corporations.

44.     To set WellcomeMat apart, Sterner, DiGiulio, and Zainy invented methods and systems for video chaptering that relies on cue points, which is data associated with a video that provides information about the contents of specific points in, or aspects of, the video. As invented by WellcomeMat, video chaptering allows for cataloguing and ordering cue points and thereby enables users to find, watch, and share desired portions of the video, search for relevant content, and/or structure and montage videos and portions of videos to present to users. WellcomeMat's video chaptering invention also allows users who upload and distribute their videos online to remotely add, modify, and/or delete such video cue points.

45.     An illustrative example of video chaptering as depicted in the patent is shown below.



Fig. 11A                              Fig. 11B

46.     Though it is now ubiquitous, video chaptering was a major development—a game changer—in online video distribution. At the time, online video distribution gave users too much information without providing them a way to find and filter content and save time. Consider, for example, a consumer who seeks a home with a large dining room. Before WellcomeMat's video chaptering invention, the consumer had to rely on either photographs or online video but without

11

chaptering. Photographs, however, failed to capture the size, features, and human scale of the dining room, and while video without chaptering well represented the dining room, it may have shown the dining room at the fifteen-minute mark and was thus cumbersome and time consuming to watch and share with others.

47.     Video chaptering also revolutionized online video marketing by allowing content providers to track and thereby analyze derivative information such as which cue points and categories of cue points were most often visited by viewers.

48.     Once WellcomeMat invented video chaptering, Sterner, DiGiulio, and Zainy knew that they had to protect it.

49.     On May 7, 2006, WellcomeMat filed Provisional Application No. 60/746,645 with the United States Patent and Trademark Office ("PTO").

50.     On May 4, 2007, WellcomeMat filed U.S. Patent Application No. 2007/0294622 A1, published December 20, 2007 (the "Sterner '286 Application").

51.     This was no light (or easy) process for WellcomeMat. The patent process imposed significant costs on WellcomeMat and its founders. DiGiulio has described that process as expensive and exhausting. Sterner recalls—at a time when his wife was supporting him and their two children on a waitress's salary—making difficult choices like whether to buy groceries and pay the electric bill or pay legal expenses associated with the patent process.

52.     Six years later, however, the co-founders' efforts came to fruition when the PTO issued the '286 Patent.

## THE ASSERTED PATENT

53.     This lawsuit asserts a cause of action for infringement of U.S. Patent No. 8,307,286 (the "'286 Patent"), which the PTO issued on November 6, 2012.

54.     WellcomeMat owns all substantial rights to the '286 Patent, including the right to sue and recover damages for all infringement thereof.

**NOTICE**

55.     As noted above, MindGeek is no stranger to the '286 Patent.

56.     On September 28, 2020, Aylo Freesites filed a petition for IPR of a patent owned by Scorpcast, LLC that was the subject its patent infringement litigation against Aylo Freesites in the U.S. District Court for the Western District of Texas (No. 20-877) and U.S. District Court for the District of Delaware (Nos. 20-1012, 21-887).

57.     In its 116-page petition, Aylo Freesites invoked U.S. Patent Application No. 2007/0263984 A1—the related patent application for the '395 Patent (the "Sterner '395 Application")—no less than 100 times, arguing that it "constitutes prior art under pre-AIA 35 U.S.C. §§ 102(a), (b), and (e)."

58.     While IPR proceedings and infringement litigation were underway, MindGeek contacted Sterner to discuss the '286 Patent. In particular, on March 19, 2021, MindGeek's counsel, Gianna E. Cricco-Lizza, counsel at Venable LLP, emailed Sterner, explaining that "a company called Scorpcast, LLC doing business as HaulStars is claiming to have invented a way of identifying specific points of interest in a video and then letting a viewer jump to those points by clicking on text or images in the video area." She went on, "I was looking at the real estate video marketing that you have done through WellcomeMat *and your patents in this area* and I think you came up with this idea well before Scorpcast did." She then asked Sterner if they could schedule a call to discuss WellcomeMat's patents.

59.     On March 23, 2021, in the phone conversation that ensued, Cricco-Lizza urged Sterner to help MindGeek.

60.     In a follow-up call, on April 9, 2021, Cricco-Lizza, with her associate Christopher M. Gerson, spoke to Sterner about the details and timeline of his inventions, including his patents.

61.     At some point during the April 9 call, Sterner pointed out that MindGeek was also violating WellcomeMat's intellectual property, including the '286 Patent. Sterner asked Cricco-Lizza whether MindGeek would negotiate for a license to WellcomeMat's intellectual property, including the '286 Patent.

62.     On September 24, 2021, Aylo Freesites issued a subpoena against WellcomeMat, directing it to submit to a deposition and produce documents relating to the '286 Patent.

63.     Despite WellcomeMat's willingness to negotiate a license agreement for the '286 Patent, MindGeek has never obtained a license for or other rights to the '286 Patent. To this day, its infringing products remain unlicensed.

## COUNT 1 – AGAINST MINDGEEK, INFRINGEMENT OF U.S. PATENT NO. 8,307,286

64.     WellcomeMat repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

65.     MindGeek has directly infringed, and continues to directly infringe, the '286 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, without authorization, one or more online video platforms that perform or are capable of performing at least Claim 13 of the '286 Patent literally or under the doctrine of equivalents, including through functionality made available through or utilized in relation with adult entertainment websites like Pornhub, Pornhub Premium, YouPorn, YouPorn Premium, RedTube, Redtube Premium, Tube8, Thumbzilla, ModelHub, XTube, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com Pornhub Premium, YouPorn, YouPorn Premium, RedTube, Redtube

14

Premium, Tube8, Thumbzilla, ModelHub, XTube, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com (hereafter the "'286 Accused Platforms").

66.    At a minimum, such '286 Accused Platforms include those servers/software utilized by MindGeek to offer an online video platform that enables content partners to upload video files and add, modify, and delete video cue point information associated with those files, which enables visitors of such website to select and utilize such cue points to find, watch/stream, and share desired content.[2]

67.    For example, Claim 13 of the '286 Patent recites "[a] method for handling video cue points, the method comprising: [1] providing a computer system having at least one computer readable medium comprising a video editing environment, and being disposed at a server side of a public network; [2] receiving a set of video information at the video editing environment using the computer system; [3] receiving a set of cue point information at the video editing environment using the computer system; [4] receiving a cue point editing command over the network from a remote client terminal disposed at a client side of the public network using the computer system; [5] modifying a portion of the cue point information at the server side of the public network according to the cue point editing command received over the public network from the client terminal; [6] receiving a cue point selection over the network from the remote client terminal identifying one of the cue points corresponding to a portion of the video information of one of the

---

[2] This description is illustrative and is not intended to be an exhaustive or limiting explanation of every manner in which each '286 Accused Platform infringes the '286 Patent. Further, the identified components and functionality—including references to Pornhub and functionality associated with Pornhub—are non-limiting and representative of the components and functionality present in all '286 Accused Platforms.

video files; and [7] streaming the portion of the video information to the client terminal over the public network in response to receiving the cue point selection."

68.     The '286 Accused Platforms each are configured to perform, and are used by MindGeek to perform, a method for handling video cue points that performs each of these elements. Pornhub is one non-limiting example. Among other things, as part of the Content Partner Program, MindGeek provides content partners with a guide that is titled, "The Pornhub Playbook: How to make money with Pornhub." https://www.pornhub .com/content_partner_guide.pdf. In that guide, MindGeek emphasizes the importance of content partners applying what MindGeek describes as Action Tags, which it explains are "indicators you can add to your video's player bar to help users get to their favorite parts easily." Likewise, MindGeek allows content partners in its Model Program to use such Action Tags to optimize their videos and thereby increase "views and ad revenue." https://www.pornhub .com/blog/crash-course-how-to-use-metadata-tags-categories; *see also* https://help.pornhub .com/hc/en-us/articles/4419870696083-How-To-Upload-Videos.

69.     In particular, the '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of providing a computer system having at least one computer readable medium that, for example, offers Pornhub content partners a video editing environment, which MindGeek calls the "'Video Manager' page." https://help.pornhub .com/hc/en-us/articles/4419860542483-Video-Tags. That video editing environment—i.e., the Video Manager page—is disposed at a server-side of a public network—i.e., at one or more MindGeek or MindGeek controlled or provisioned servers on the server side of the Internet.

70.     Further, the '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of receiving a video file from a content partner, who, for example, submits the video to Pornhub through the Video Manager page.

71.     The '286 Accused Platforms are also configured to perform, and are used by MindGeek to perform, a method of receiving a set of cue point information, which MindGeek calls "Action Tags," from—for example—a Pornhub content partner through the Video Manager page. *Id.* Such cue point information includes, but is not limited to, indexed time positions or tags anywhere within a video file. Thus, if selected, Action Tags will direct the viewer to desired content. MindGeek even provides an "Action Tag" cue point bank to allow and encourage content partners to remotely add and manage such information to their uploaded video content. By using common Action Tags, the cue point bank enhances Pornhub's search and montage capabilities.

72.     In addition, the '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of receiving a cue point editing command over the network from a remote client terminal disposed at a client side of the public network using the computer system. For example, the Video Manager page enables a content partner to send a cue point editing command to a MindGeek owned or provisioned server by adding, modifying, and/or deleting cue points.

73.     Below is an illustrative example of the Video Manager page (redacted for pornographic content).



74.     The '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of modifying, in response to receiving the cue point editing command from a content partner, a portion of the cue point information at the server side of the public network. Modifying cue point information may include, but is not limited to, changing various attributes of an existing cue point (e.g., the cue point's name or time position), changing the associations between an existing cue point and either a video file or other cue point information, or any other useful type of modification to cue point information. *E.g.,* https://help.pornhub .com/hc/en-

us/articles/4419860542483-Video-Tags;                    https://help.pornhub .com/hc/en-
us/articles/4419870696083-How-To-Upload-Videos.

75.     The '286 Accused Platforms are configured to perform, and are used by MindGeek
to perform, a method of receiving a cue point selection over the network from the remote client
terminal identifying one of the cue points corresponding to a portion of the video information of
one of the video files; and streaming the portion of the video information to the client terminal
over the public network in response to receiving the cue point selection. In particular, the '286
Accused Platforms enable a visitor operating from a remote client terminal to select—for
example—an Action Tag that corresponds to a portion of the video information of one of the video
files. Upon receiving the cue point selection, the '286 Accused Platforms are configured to cause
the remote client terminal to immediately navigate to the desired portion of the video and begin
streaming the video information corresponding to the selected tag. Below is an illustrative example
one such client terminal.



76.     MindGeek thus directly infringed, and continues to directly infringe, each element of at least Claim 13 of the '286 Patent by selling and offering to sell in the United States, and by importing into the United States, without authorization, the '286 Accused Platforms before the expiration date of the '286 Patent.

77.     MindGeek's infringement of the '286 Patent was willful. As detailed above, MindGeek was aware of the '286 Patent and its infringement of it. Nevertheless, without authorization, MindGeek deliberately continued to infringe the '286 Patent and also encouraged others to infringe the '286 Patent, as described above, including by selling and/or using the '286 Accused Platforms in the United States.

78.     MindGeek's acts of infringement have caused damage to WellcomeMat, and WellcomeMat is entitled to recover from MindGeek the damages it has sustained as a result of such wrongful acts in an amount to be proven at trial.

79.     Further, WellcomeMat states that it is entitled to all damages against MindGeek to which it otherwise is entitled because, among other things, the asserted claim of the '286 Patent is a method claim that is not subject to 35 U.S.C. § 287's marking requirement.

## COUNT 2 – AGAINST BELTRAN, INFRINGEMENT OF U.S. PATENT NO. 8,307,286

80.     WellcomeMat repeats and incorporates by reference each preceding paragraph as if fully set forth herein, and further states:

81.     Defendant Beltran has indirectly infringed, and continues to indirectly infringe, Claim 13 of the '286 Patent in violation of 35 U.S.C. § 271(b) by taking active steps to encourage and facilitate direct infringement by MindGeek, in the United States, through his use of the '286 Accused Platforms.

82.     For example, Beltran used the '286 Accused Platforms when uploading video content to Pornhub. Four months ago, for example, Beltran uploaded a video titled, "Meet Taylor, . . . on roof in Downtown Dallas." From the Video Manager page, Beltran applied Action Tags identifying at least two cue points—one at the 00:11 mark and one at the 01:20 mark. Beltran used the '286 Accused Platforms to upload and add Action Tags to video content on other occasions as well.

83.     By using the '286 Accused Platforms in this way, Beltran has encouraged and facilitated and, on information and belief, will continue to encourage and facilitate direct infringement by MindGeek. Indeed, when Beltran uploads video content onto Pornhub and adds and/or edits Action Tags, such actions cause MindGeek to infringe Claim 13 of the '286 Patent.

84.     Further, Beltran undertook such actions with knowledge of '286 Patent and his infringement of it. On September 19, 2023, WellcomeMat sent Beltran a letter by FedEx First Overnight explaining that his actions in uploading and adding Action Tags to certain of his video content infringed the '286 Patent and that he needed to obtain a license for such infringement. The letter was delivered to Beltran's Texas address on September 21, 2023, at 4:22 pm CST.

85.     On October 12, 2023, several weeks after receiving WellcomeMat's letter, Beltran uploaded a video to Pornhub titled, "See how Ivy Hale . . . before she . . . on it." From the Video Manager page, Beltran applied Action Tags identifying at least two cue points—one at the 01:00 mark and one at the 02:32 mark. Thus, after receiving notice of the '286 Patent and his need to obtain a license for it, Beltran took active steps to encourage and facilitate direct infringement by MindGeek by uploading video content using a method that infringes the '286 Patent.

86.     Beltran has not removed the infringing content or any Action Tags from his videos. Nor has Beltran contacted WellcomeMat to discuss his need to obtain a license.

87.     Upon information and belief, Beltran will continue to use the '286 Accused Platforms when uploading video content to, and managing video content on, Pornhub after receiving notice of his infringement.

88.     In addition, Beltran has directly infringed, and continues to directly infringe, the '286 Patent in violation of 35 U.S.C. § 271(a) because MindGeek's performance of each step of Claim 13 of the '286 Patent is attributable to Beltran.

89.     For example, MindGeek's acts of infringement are attributable to Beltran because Beltran directs or controls MindGeek's performance of each step of Claim 13.

90.     As set forth in the Terms of Service that Beltran agreed to when creating his model account, Beltran controls any and all activity that occurs on his model page, including use of Pornhub's Action Tag function. https://www.modelhub.com/information/terms. In particular, Beltran agreed that he is responsible for the "activity that occurs on [his] account," the content that he posts, and the "consequences of posting" such content. *Id.* Beltran also agreed that he owns or has licenses to use "all patent . . . rights" relating to the production and dissemination of his content "in the manner contemplated by the" Pornhub website, including Pornhub's Action Tag function. *Id.* Thus, while MindGeek ultimately performs each step of Claim 13, Beltran directs and controls any activity that occurs on his model page, including MindGeek's use of the '286 Accused Platforms.

91.     Similarly, MindGeek's acts of infringement are attributable to Beltran because, through the Terms of Service, MindGeek and Beltran entered into a contract pursuant to which MindGeek performs each step of Claim 13 of the '286 Patent.

92.     In addition to the provisions set forth above, under the Terms of Service, Beltran "grant[ed] each user of" the Pornhub site—i.e., viewers and visitors—"a non-exclusive, royalty

free license to access [his] Content through" Pornhub, and "to use, reproduce, display, communicate, and perform such Content *as permitted through the functionality of*" Pornhub, which includes, but is not limited to, the '286 Accused Platforms. *Id.* (emphasis added). Thus, under the Terms of Service, MindGeek and Beltran agreed that MindGeek would use the '286 Accused Platforms—a major aspect of Pornhub's functionality—when hosting Beltran's content on his model page and allowing him to upload and manage such content, including by adding Action Tags to it.

93.     Further, when applying to Pornhub's Model Program, Beltran and MindGeek executed the "Primary Model Agreement." https://help.pornhub.com/hc/en-us/articles/4419875178131-Model-Agreement. Upon information and belief, under the Primary Model Agreement, MindGeek and Beltran agreed that MindGeek would use the '286 Accused Platforms when hosting Beltran's content on Pornhub and allowing him to upload and manage such content, including by adding Action Tags to it.

94.     Finally, MindGeek's acts of infringement are attributable to Beltran because Beltran profits from and has the right or ability to limit MindGeek's acts of infringement (which he has not done).

95.     In particular, Beltran profits from MindGeek's acts of infringement because, among other things, he profits from each view of such content and the '286 Accused Platforms improve his viewers' experience, thereby increasing his views and revenue. For example, since Beltran began using the '286 Accused Platforms, the videos for which he has used the '286 Accused Platforms have typically obtained higher views than videos that do not use the patented methods.

96.     Not only do those increased views generate additional income to Beltran, but they also promote his brand, thus generating additional income from other sources. For example,

Beltran's Pornhub model page advertises his official site (OnlyFans) and social media (Twitter, Snapchat, and Instagram)—platforms where he may or does earn additional income. For example, Beltran charges his OnlyFans subscribers $8.99 per month. And in at least one video for which Beltran used the '286 Accused Platforms, Beltran promoted his OnlyFans tag (@MultipleAffairs) in the bottom ride-hand corner of the video.

97.     Moreover, Beltran has the right or ability to limit MindGeek's acts of infringement. Each time Beltran uses the '286 Accused Platforms, MindGeek commits a separate act of infringement that—absent Beltran's affirmative action of uploading content to Pornhub and thereafter managing it by adding Action Tags to it—would not have occurred.

98.     Beltran's infringement of the '286 Patent was willful. As detailed above, Beltran was aware of the '286 Patent and his infringement of it. Nevertheless, without authorization, Beltran deliberately continued to infringe the '286 Patent and also encouraged others to infringe the '286 Patent, as described above, including by selling and/or using the '286 Accused Platforms in the United States.

99.     Beltran's acts of infringement have caused damage to WellcomeMat, and WellcomeMat is entitled to recover from Beltran the damages it has sustained as a result of such wrongful acts in an amount to be proven at trial.

100.     Further, WellcomeMat states that it is entitled to all damages against Beltran to which it otherwise is entitled because, among other things, the '286 Patent is a methods patent that is not subject to 35 U.S.C. § 287's marking requirement.

## DEMAND FOR JURY TRIAL

101.     Plaintiff hereby demands a jury trial for all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.      Declaring that MindGeek and Beltran each has infringed and continues to infringe the U.S. Patent No. 8,307,286;

B.      Declaring that MindGeek and Beltran's infringement of U.S. Patent No. 8,307,286 has been willful and deliberate;

C.      Awarding damages to WellcomeMat in an amount no less than a reasonable royalty for each Defendant's infringement of U.S. Patent No. 8,307,286, together with prejudgment and post-judgment interest and without limitation under 35 U.S.C § 287;

D.      Awarding WellcomeMat its attorneys' fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law;

E.      Awarding all other costs and relief that the Court deems just and proper.


Date: October 13, 2023

Respectfully submitted,


*/s/Claire Abernathy Henry*
Claire Abernathy Henry
Texas State Bar No. 24053063
claire@wsfirm.com
WARD, SMITH & HILL, PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Phone: (903) 757-6400
Facsimile: (903) 757-2323

Andres C. Healy
Washington State Bar No. 45578
ahealy@susmangodfrey.com
Matthew R. Berry
Washington State Bar No. 37364

mberry@susmangodfrey.com
John Schiltz
Washington State Bar No. 48973
jschiltz@susmangodfrey.com
SUSMAN GODFREY L.L.P.
401 Union Street Suite 3000
Seattle, WA 98101-2683
Telephone: (206) 505-3880
Facsimile: (206) 516-3883

*Attorneys for WellcomeMat, LLC*