**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| WELLCOMEMAT, LLC, | |
| *Plaintiff,* | |
| v. | C.A. No. 2:23-cv-483-JRG-RSP |
| AYLO HOLDINGS S.à r.l., AYLO FREESITES LTD., AYLO PREMIUM, LTD., 9219-1568 QUEBEC, INC., and JARROD BELTRAN, | JURY TRIAL DEMANDED |
| *Defendants.* | |

**DEFENDANTS AYLO HOLDINGS S.à r.l., AYLO FREESITES LTD,
AYLO PREMIUM LTD, AND 9219-1568 QUEBEC, INC.'S
MOTION TO DISMISS PLAINTIFF WELLCOMEMAT, LLC'S
AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)
<u>FOR FAILURE TO STATE A CLAIM</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 3

III.  APPLICABLE LAW ........................................................................................... 4

    A. Patent Eligibility May be Decided on a Motion Under Fed. R. Civ. P. 12(b)(6) .................. 4

    B. *Alice* Section 101 Framework ................................................................. 5

IV.  ARGUMENT ....................................................................................................... 5

    A. *Alice* Step One: The '286 Patent Claims are Directed to the Abstract Idea of Receiving and Modifying Chapter Markers ................................................................. 5

    B. *Alice* Step Two: The '286 Patent Claims Lack an Inventive Concept ................................. 13

    C. The Allegations Added to the Amended Complaint Have No Effect on the Outcome of this Motion ........................................................................... 16

    i.  Subject Matter Eligibility Depends on the Language of the Claims and not on the Contents of the Complaint or Patent Specification ................................................ 16

    ii.  The Conclusory Allegations and Attorney Arguments in the Amended Complaint Should be Disregarded .................................................................... 17

    iii. Filing an Amended Complaint Serves No Purpose Other Than to Delay Resolution of this Motion........................................................................... 20

V.  CONCLUSION.................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accenture Global Servs., GmbH v. Guidewire Software, Inc.*,
    728 F.3d 1336 (Fed. Cir. 2013)...................................................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)............................................................................. *passim*

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*,
    687 F.3d 1266 (Fed. Cir. 2012)....................................................................4

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018).............................................................13, 14

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
    927 F.3d 1306 (Fed. Cir. 2019)..................................................................19

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019)................................................................4, 19

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017)................................................................4, 5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014)..................................................................16

*DigiMedia Tech, LLC v. ViacomCBS Inc.*,
    592 F. Supp. 3d 291 (S.D.N.Y. 2022)........................................................11

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)..................................................................14

*Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)..................................................................19

*In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*,
    No. 14-887-CFC, 2018 WL 6617142 (D. Del. Dec. 18, 2018) ...............13

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)....................................................2, 9, 10, 11

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..................................................................15

*Interval Licensing LLC v. AOL, Inc.*,
   896 F.3d 1335 (Fed. Cir. 2018).................................................................................4

*Management Sci. Assocs. v. Datavant, Inc.*,
   510 F. Supp. 3d 238 (D. Del. 2020)....................................................................10, 11

*Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*,
   No. 2:17-cv-00328-JRG-RSP, 2017 WL 5571331 (E.D. Tex. Sept. 15, 2017).......................5

*Maxell Ltd. v. Huawei Device USA Inc.*,
   297 F. Supp. 3d 668, 707 (E.D. Tex. Jan. 31, 2018)................................................1

*MG Freesites Ltd. v. Scorpcast LLC*,
   651 F. Supp. 3d 744 (D. Del. 2023).................................................................2, 8

*Netflix, Inc. v. Rovi Corp.*,
   114 F. Supp. 3d 927 (N.D. Cal. 2015)...............................................................10

*NexusCard, Inc. v. Kroger Co.*,
   173 F. Supp. 3d 462 (E.D. Tex. 2016)...............................................................11

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
   No. 2:16-cv-00152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 7, 2017) .................15, 16

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*,
   No. 2:15-cv-01559-WCB, 2016 WL 2742379 (E.D. Tex. May 9, 2016)..............................15

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).....................................................................4

*Simio, LLC v. FlexSim Software Prods., Inc.*
   983 F.3d 1353 (Fed. Cir. 2020).....................................................................5

*Specialized Monitoring Sols., LLC v. ADT LLC*,
   367 F. Supp. 3d 575 (E.D. Tex. 2019)..............................................................2, 10

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016)....................................................................16

*Tech. in Ariscale, LLC v. Razer USA, Ltd.*,
   2023 U.S. Dist. LEXIS 210623 (C.D. Cal. Nov. 27, 2023).........................................10

*TLI Commc'ns LLC v. AV Auto., L.L.C. (In re TLI Commc'ns LLC Patent Litig.)*,
   823 F.3d 607 (Fed. Cir. 2016)....................................................................10, 14

*Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...................................................................13, 14

*Ultramercial, Inc. v. Hulu, LLC,*
   772 F.3d 709 (Fed. Cir. 2014) ............................................................................4, 5

*Universal Secure Registry v. Apple Inc.,*
   10 F.4th 1342 (Fed. Cir. 2021) ..............................................................................5

*VideoShare, LLC v. Google, Inc.,*
   No. 1:13-cv-00990-GMS, 2016 WL 4137524 (D. Del. Aug. 2, 2016), *aff'd*
   *without opinion*, 695 Fed. App'x. 577 (Fed. Cir. 2017) ...................................10, 13

**Statutes**

35 U.S.C. § 101 ............................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..........................................................................................4

## I.    INTRODUCTION

Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd, Aylo Premium Ltd, and 9219-1568 Quebec Inc. (collectively, "Aylo") previously moved to dismiss this action with prejudice because the sole asserted patent, U.S. Patent No. 8,307,286 ("the '286 Patent"), is invalid under 35 U.S.C. § 101.  Dkt. No. 15.  Plaintiff WellcomeMat, LLC ("WellcomeMat") then amended its complaint to moot that motion.  *Id.*, 25; 26.  That endeavor is futile.  Subject matter ineligibility relates to a patent's claims and cannot be cured by amending the complaint.  Aylo therefore renews its Motion.[1]

The '286 Patent claims lack subject matter eligibility under the Supreme Court's *Alice* precedent because they are directed to the abstract idea of receiving chapter markers for a video and modifying such chapter markers.  Further, the claims do not recite any inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.

Adding chapter markers to a video is an abstract idea.  For centuries humans have used "table of contents" and "chapter headings" in books and other writings to inform readers where certain information may be found.[2]  The purported inventors of the '286 Patent acknowledged that they took the well-known concept of using chapter markers in printed works and merely applied it

---

[1] Pursuant to Judge Gilstrap's Standing Order on pre-*Markman* motions under 35 U.S.C. § 101, the parties met and conferred on Feb. 5, 2024.  On Feb. 11, 2024, WellcomeMat proposed that the words "cue point information" should be construed throughout claim 13 as "cue point information associated with video data."  This construction merely inserts an additional limitation into the claim language without clarifying what "cue point information" is.  *Maxell Ltd. v. Huawei Device USA Inc.*, 297 F. Supp. 3d 668, 707 (E.D. Tex. Jan. 31, 2018) (rejecting proposed construction, in part, as it "seeks not to interpret any word or phrase in the claim, but, rather, seeks to add a whole limitation missing from the claim language.").  Moreover, this proposed construction reinforces that "cue point information" is nothing more than a chapter marker in the video.  Aylo maintains that claim construction is not needed and the '286 Patent's ineligibility is not dependent upon the construction of any claim term.

[2] The Gutenberg Bible, printed in the 1400s, had chapter headings added by hand after printing. *See* https://library.harvard.edu/collections/gutenberg-bible ("Chapter headings and capitals were left to be rubricated by hand, a common practice in early printed books.") (accessed Feb. 7, 2024).

to digital videos under the new name of "cue points":

> For example, say a video file contains video information about a hotel suite, in which there is one minute of video each relating to the bedroom, bathroom, living room, and kitchenette. In this example, **four *cue points* may be associated with the video file, pointing to time positions at zero, one, two, and three minutes, and** *essentially providing chapter markers for the different sections of the video*.

Ex. A (the '286 Patent), 7:53-60 (emphasis added).  For example, Fig. 6 of the '286 Patent shows a cue point (*i.e.*, chapter marker) titled "Exterior" with the time 34.03 seconds being added to the video.  *See id.*, Fig. 6; 28:31-60.  When the cue point is selected, the resulting system expectedly directs viewers to the portion of the video corresponding to the cue point (*e.g.*, selecting the "Exterior" cue point directs the viewer to 34.03 seconds in the video).  Courts have already found such generic use of tags (*e.g.*, chapter markers) to direct users to a certain location in data (*e.g.*, a specific time in a video) to be an unpatentable abstract idea.  *See, e.g.*, *MG Freesites Ltd. v. Scorpcast LLC*, 651 F. Supp. 3d 744 (D. Del. 2023); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017).

Further, the idea of ***modifying*** a chapter marker in a video is also abstract.  Traditionally, to update material in a publication, such as in the table of contents or chapter headings, publishers issue an erratum (*e.g.*, a separate slip of paper) to provide updated information to readers.  The use of such "errata sheets" is well-known across many different industries.[3]  The '286 Patent claims recite steps of modifying a cue point (*i.e.*, chapter marker), for example, to correct the cue point's time position in the video.  As before, the resulting system would merely direct viewers to the new corresponding

---

[3] The earliest account of an errata sheet dates to 1465.  *See* Reading, Society and Politics in Early Modern England 44 (Kevin Sharpe and Steven N. Zwicker eds.) (2003) ("Library catalogues record, for their edition of Lactantius published on October 29, 1465, two concluding pages of the volume titled . . . 'The errata of Lactantius Firmianus, which he himself did not catch, have been gathered and written down by brother Antonio Randesi, theologian'[]").  Available at https://catdir.loc.gov/catdir/samples/cam033/2002035078.pdf (accessed Feb. 7, 2024).

portion of the video when the modified cue point is selected. And similarly, courts have already found that merely modifying data is an unpatentable abstract idea. *See, e.g.*, *Specialized Monitoring Sols., LLC v. ADT LLC*, 367 F. Supp. 3d 575, 586-87 (E.D. Tex. 2019) (collecting cases).

Finally, the '286 Patent claims do not improve the functioning of any computer, nor do they otherwise address or solve any other technological problem. The claims only recite the use of conventional computer components to carry out routine functions such as providing, receiving, modifying, or streaming data. Claim language reciting from where data is sent (*e.g.*, from "a client side of the public network") or where data is modified (*e.g.*, at "a server side of a public network") is immaterial, as where generic computer operations occur cannot confer patent eligibility.

## II.    BACKGROUND

WellcomeMat alleges in its Amended Complaint that Aylo infringes at least claim 13 of the '286 Patent,[4] which recites:

> ***13[pre]*** A method for handling video cue points, the method comprising:
>
> ***13[a]*** providing a computer system having at least one computer-readable medium comprising a video editing environment, and being disposed at a server side of a public network;
>
> ***13[b]*** receiving a set of video information at the video editing environment using the computer system;
>
> ***13[c]*** receiving a set of cue point information at the video editing environment using the computer system;
>
> ***13[d]*** receiving a cue point editing command over the network from a remote client terminal disposed at a client side of the public network using the computer system;
>
> ***13[e]*** modifying a portion of the cue point information at the server side of the public network according to the cue point editing command received over the public network from the client terminal;

---

[4] The Amended Complaint only names claim 13. As such, the briefing will focus the *Alice* two-step framework on this claim, referencing the other claims of the '286 Patent as needed.

*13[f]* receiving a cue point selection over the network from the remote client terminal identifying one of the cue points corresponding to a portion of the video information of one of the video files; and

*13[g]* streaming the portion of the video information to the client terminal over the public network in response to receiving the cue point selection.

Ex. A, 54:66-55:22 (limitation headers added). The '286 Patent has two other independent claims (claims 1 and 21) that recite substantially the same subject matter. *See* Ex. B (comparing the independent claims of the '286 Patent). The dependent claims likewise lack any substantive limitations that would confer patent eligibility. *See* Section IV.A, *infra*.

## III.    APPLICABLE LAW

### A.  Patent Eligibility May be Decided on a Motion Under Fed. R. Civ. P. 12(b)(6)

Patent subject matter eligibility is "a question of law that may contain underlying issues of fact." *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1342 (Fed. Cir. 2018). The Court will grant a motion to dismiss for lack of patent eligibility under 35 U.S.C. § 101 where "there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). Patent eligibility "may be, and frequently has been, resolved on a Rule 12(b)(6)" motion. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018).

A determination of patent eligibility may be made at the pleading stage or before claim construction on a motion to dismiss. *See, e.g.*, *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *Bancorp Servs., L.L.C. v. Sun Life Assurance Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101."). The Federal Circuit has repeatedly affirmed § 101 rejections on the pleadings, before claim construction or significant discovery has commenced. *See Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir.

2017) (citations omitted).  A party raising a claim construction dispute must explain why claim construction affects patent eligibility.  *See, e.g., Mantis Commc'ns, LLC v. Baskin-Robbins Franchising, LLC*, No. 2:17-cv-00328-JRG-RSP, 2017 WL 5571331, at *3 (E.D. Tex. Sept. 15, 2017) (granting motion to dismiss on § 101 grounds prior to holding a *Markman* hearing where patentee failed to establish the necessity of claim construction in resolving the motion).

**B. *Alice* Section 101 Framework**

The Supreme Court has articulated a two-step test for examining patent eligibility.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  At step one, the court "determine[s] whether the claims at issue are directed to a patent-ineligible concept."  *Id.* at 218.  Under the "directed-to inquiry, we ask what the patent asserts to be the focus of the claimed advance over the prior art, to determine whether the claim's character as a whole is directed to ineligible subject matter."  *Simio, LLC v. FlexSim Software Prods., Inc.* 983 F.3d 1353, 1359 (Fed. Cir. 2020) (citations and quotations marks omitted).

Under step two, a court is to "examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application."  *Alice*, 573 U.S. at 221 (citation and quotations omitted).  "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'"  *Universal Secure Registry v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021) (citation omitted).

**IV.    ARGUMENT**

**A. *Alice* Step One: The '286 Patent Claims are Directed to the Abstract Idea of Receiving and Modifying Chapter Markers**

The first step of *Alice* focuses on determining the abstract idea at the "heart" of the claims.  *Ultramercial*, 772 F.3d at 714.  As articulated in the section of the Amended Complaint titled "WELLCOMEMAT'S STORY," the purported genesis of the invention was a need for a "video

chaptering" system for real estate videos that "relies on cue points" and "enables users to find, watch, and share desired portions of the video" as well as "modify cue points remotely." *See* Dkt. No. 25, ¶44; ¶¶40-60; *see also*, Ex. A, Abstract.

Claim 13 of the '286 Patent generally relates to receiving a video ("receiving a set of video information"), chaptering the video ("receiving a set of cue point information"), receiving a selection of a video chapter marker ("receiving a cue point selection . . . corresponding to a portion of the video information"), and streaming the corresponding portion of the video ("streaming the portion of the video information"). The claim also includes receiving an instruction to edit a video chapter marker ("receiving a cue point editing command") and then modifying the video chapter marker ("modifying a portion of the cue point information . . . according to the cue point editing command"). Independent claims 1 and 21 both recite variants of these same steps. *See* Ex. A, 53:55-56:25 (independent claims 1, 13, and 21); Ex. B (comparing the independent claims of the '286 Patent on a limitation-by-limitation basis).

It is not an oversimplification to state that the independent claims are all directed to the abstract idea of receiving and modifying chapter markers, as all other claim limitations merely relate to conventional computer structures and their expected functionalities.[5] Ex. A, 53:55-56:25 (independent claims 1, 13, and 21). The dependent claims similarly recite further conventional computer structures or routine data manipulation steps such as storing data, authenticating users, receiving and displaying comments, and communicating with other devices, for example:

- Claims 2-4 and 6 recite a routine "data store" or "relational database" to "store" data;

- Claim 5 further defines the "cue point information" with additional conventional data;

- Claim 7 recites a "comment handler" performing routine functions such as "receiving,"

---

[5] The independent claims recite conventional computer structures such as a "computer system," "processor," "computer-readable medium," "server," "terminal," "module," and "network" and routine computer functions such as "providing," "receiving," "modifying," and "streaming" data.

"displaying," "associating," or "communicat[ing]" data;

- Claims 8-10 recite routine computers and "servers" communicating over a "network";

- Claim 11 recites that the "network" is the "Internet";

- Claim 12, 14-16, and 25 recite different routine data manipulation steps of "modifying" the cue point information;

- Claim 17 recites "generating" the cue point information "automatically";

- Claims 18-19 recite routine authentication steps;

- Claim 20 recites routine streaming of video data;

- Claim 22 recites a conventional "video playback module" configured to playback video in response to cue point selection;

- Claims 23 recites a "video playback module" including routine editing functionality;

- Claims 24 recites a "video playback module" in communication with data storage; and

- Claims 26-28 recite different routine editing functions of a conventional "server" "run[ning]" a "module" over a "public network."

*See, e.g.*, Ex. A, 54:18-58:5.

The specification further confirms that the '286 Patent is directed to the abstract idea of receiving and modifying chapter markers. *See, e.g.*, *id.*, 2:51-65 ("A first set of embodiments . . . comprises a cue point handler configured to execute at least one of creating, modifying, deleting, or interpreting at least a portion of the set of cue point information."); 3:33-47 ("A second set of embodiments provides a method for handling video cue points . . . [that] receives over the network, using the computer system, a set of cue point information; and updates a set of cue point associations[.]"); 3:48-51 ("[T]he method further provides a cue point editing mode configured to perform at least one of creating, modifying, deleting, or interpreting at least a portion of the set of cue point information."); 4:11-30 ("A third set of embodiments provides a method for handling video cue points . . . [that] receives, using the computer system, server cue point information from

a set of stored cue point information[.]"); 4:60-5:7 ("[T]he method further accesses a cue point editing mode configured to perform at least one of creating, modifying, deleting, or interpreting at least a portion of the set of cue point information[.]").

WellcomeMat acknowledges in its Amended Complaint that its invention was "methods and systems for handling ***video chaptering that relies on cue points***" which allows users to "***modify*** cue points remotely." *See, e.g.*, Dkt. No. 25, ¶44 (emphasis added). Indeed, the Amended Complaint repeatedly recites that the invention of the '286 Patent is "video chaptering." *See id.*, ¶3 ("the '286 Patent claims methods and systems for handling video chaptering"); ¶6 (accusing "video chaptering" of infringement); ¶44; ¶45 ("the client-side of video chaptering as depicted in the patent"); ¶46 ("WellcomeMat's video chaptering invention"); ¶¶47-49; ¶57; ¶61 ("Once WellcomeMat invented its method of video chaptering, Sterner, DiGiulio, and Zainy knew that they had to protect it."). Such statements reinforce the abstract idea proposed here and confirm that the '286 Patent claims are indeed ***directed to*** this abstract idea.

Courts have found similar abstract ideas invalid under § 101. In *MG Freesites Ltd v. Scorpcast LLC*, the Court analyzed claim 20 of U.S. Patent No. 9,965,780 ("the '780 Patent") and explicitly held that the concept of "denoting where certain content is found inside a video" is no different than placing a bookmark in a book and therefore a system that "enables the user to quickly navigate to specific portions of the video content" is directed to an abstract idea. 651 F. Supp. 3d at 752-53 (citations and alterations omitted). The Court further found that "[b]ookmarking information for another to find, such as annotating a particular passage of a book, is longstanding conduct that existed well before the advent of computers and the Internet" and thus patent claims directed to this concept improperly claim an abstract idea. *Id.* at 753. The WellcomeMat claims are no different as they are similarly directed to the abstract idea of placing chapter markers in a

video (*i.e.*, bookmarking a video) to enable users to quickly navigate within the video:

| Claim 13 of the '286 Patent | Claim 20 of the '780 Patent |
|---|---|
| ***receiving a set of video information*** at the video editing environment using the computer system; | ***receive***, over the network using the network interface, ***a first video***; |
| ***receiving a set of cue point information*** at the video editing environment using the computer system; | ***receive*** . . . from the first user device ***an association of a first image and/or a first text with a first start position of the first video***; |
| ***receiving a cue point selection*** over the network from the remote client terminal identifying one of the cue points corresponding to a portion of the video information of one of the video files; and ***streaming the portion of the video information to the client terminal over the public network in response to receiving the cue point selection***. | ***enable a corresponding navigation event to occur at least partly in response to a user selecting:*** ***the first image and/or the first text*** during a playback of the first video, wherein the first image and/or the first text is presented in or adjacent to the playback area. |

*See also* Ex. C (comparing claim 13 of the '286 Patent with claim 20 of the '780 Patent).[6]

Further, in *Intellectual Ventures I*, the Federal Circuit determined that the at-issue invention was directed to the abstract idea of "creating an index and using that index to search for and retrieve data" and "locating information in a database and . . . using an index that includes tags and metafiles to locate the desired information." 850 F.3d at 1327. The Federal Circuit found:

> This type of activity, i.e., ***organizing and accessing records through the creation of an index-searchable database***, includes longstanding conduct that existed well before the advent of computers and the Internet. ***For example, a hardcopy-based classification system (such as library-indexing system) employs a similar concept*** as the one recited by the '434 patent. There, classifiers organize and cross-reference information and resources (such as books, magazines, or the like) by certain identifiable tags, e.g., title, author, subject. Here, tags are similarly used to identify, organize, and locate the desired resource.

---

[6] The PTAB has also recognized the similarity of the WellcomeMat '286 Patent and the '780 Patent. In IPR2020-01697, the PTAB invalidated all challenged claims of the '780 Patent based on U.S. Patent Publication No. 2007/0263984, which shares the same specification as the '286 Patent. *See* IPR2020-01697, Paper 38 (Apr. 15, 2022).

*Id.* (emphasis added).

The claims in the '286 Patent are similarly abstract: placing chapter markers in a video that can be used to access a portion of the video is analogous to the ineligible abstract idea in *Intellectual Ventures I* of creating tags or an index that can be used to identify and locate a specific portion of data. Several courts have noted that claims directed to locating a desired resource using a bookmark or tag are abstract as they are directed to a type of activity that has existed well before computers and the Internet. *See, e.g.*, *Netflix, Inc. v. Rovi Corp.*, 114 F. Supp. 3d 927, 948 (N.D. Cal. 2015) (finding "claims are directed to the abstract idea of bookmarking media files across devices, despite the presence of a server and a client"); *TLI Commc'ns LLC v. AV Auto., L.L.C. (In re TLI Commc'ns LLC Patent Litig.)*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("attaching classification data, such as dates and times, to images for the purpose of storing those images in an organized manner" is an abstract idea); *VideoShare, LLC v. Google, Inc.*, No. 1:13-cv-00990-GMS, 2016 WL 4137524, at *8 (D. Del. Aug. 2, 2016), *aff'd without opinion*, 695 Fed. App'x. 577 (Fed. Cir. 2017) ("attaching an identification tag . . . for the purpose of identifying the stored streaming video file is also a basic [patent-ineligible] concept").

The only difference between the WellcomeMat claims and those in *Scorpcast* and *Intellectual Ventures I* is that users here can also "modify" a chapter marker—but that cannot save these claims from abstractness as merely manipulating data is itself an abstract idea. *See, e.g.*, *Specialized Monitoring Sols.*, 367 F. Supp. 3d at 586-87 (collecting cases where the Federal Circuit has observed that claims to computerized gathering, manipulating, and displaying of data are directed to abstract ideas); *see also*, *Tech. in Ariscale, LLC v. Razer USA, Ltd*., 2023 U.S. Dist. LEXIS 210623 at *10 (C.D. Cal. Nov. 27, 2023) ("Sending, receiving, and manipulating data are likewise abstract ideas."); *Management Sci. Assocs. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 245

(D. Del. 2020) (finding claims directed to the abstract idea of "collecting, labeling, and manipulating data" do not contain any inventive concept); *DigiMedia Tech, LLC v. ViacomCBS Inc.*, 592 F. Supp. 3d 291, 301 (S.D.N.Y. 2022) ("Manipulating data and displaying it to a user [is] an abstract idea."). Thus, the '286 Patent claims, which at best recite **two abstract ideas** (*e.g.*, video chaptering and manipulating data), are similarly ineligible. *See NexusCard, Inc. v. Kroger Co.*, 173 F. Supp. 3d 462, 467 (E.D. Tex. 2016) ("[D]escribing two abstract ideas in connection with each other . . . does not cause either abstract idea to then become a concrete thing.").

Importantly, "with the exception of generic computer-implemented steps, there is nothing in the claims that foreclose them from being performed by a human, mentally or with pen and paper." *Intellectual Ventures I*, 838 F.3d at 1318 (citation omitted). For example, the recited abstract idea is akin to adding an errata sheet to a book, which humans have performed long before the filing of the '286 Patent.[7] Below is an exemplary element-by-element comparison showing that every claim element could have been performed by a human, mentally or with pen and paper:

| Claim 13 of the '286 Patent | Human Pen and Paper Analogy |
|---|---|
| A method for handling video cue points, the method comprising: | |
| providing a computer system having at least one computer-readable medium comprising a video editing environment, and being disposed at a server side of a public network; | A librarian is sitting at a library's reference desk with pen and paper and is able to edit books, as shown below (the library is public and the librarian serves people at the library and is thus at the "server side of a public network"). |
| receiving a set of video information at the video editing environment using the computer system; | The librarian receives a set of books at the reference desk.<br><br>For example, the librarian receives a set of the Encyclopedia Britannica. |
| receiving a set of cue point information at the video editing environment using | The librarian receives an index for the set of books at the reference desk. |

---

[7] As another example germane to patent litigation, the abstract idea of the '286 Patent claims is no different than issuing a "Certificate of Correction" to correct a patent.

| | |
|---|---|
| the computer system; | For example, in a multi-volume set of books such as the Encyclopedia Britannica, an additional volume is included that contains an index for the other volumes. |
| receiving a cue point editing command over the network from a remote client terminal disposed at a client side of the public network using the computer system; | The librarian receives a call from a publisher of the set of books instructing the librarian to edit the book index (the publisher is remote from the librarian and is thus at the "client side of the public network").<br><br>For example, the publisher of the Encyclopedia Britannica calls the librarian and provides an instruction to edit the index volume to correct the starting page number for the subject "Abstract Art." |
| modifying a portion of the cue point information at the server side of the public network according to the cue point editing command received over the public network from the client terminal; | The librarian creates an errata sheet using pen and paper in accordance with the publisher's instruction and modifies the book index by inserting the errata sheet. The librarian does this at the library (the "server side" of the public network). |
| receiving a cue point selection over the network from the remote client terminal identifying one of the cue points corresponding to a portion of the video information of one of the video files; and | The librarian receives a call from the publisher to look up information in the book index (*e.g.*, to ensure the index has been modified with the errata sheet).<br><br>For example, the publisher asks the librarian to find "Abstract Art" in the Encyclopedia using the index. |
| streaming the portion of the video information to the client terminal over the public network in response to receiving the cue point selection. | The librarian looks up the information indicated by the book index and relays it to the book publisher.<br><br>For example, the librarian finds "Abstract Art" in the Encyclopedia using the index and conveys the information to the publisher. |

This demonstrates that all steps recited in claim 13 are well-known and abstract, and that

this claim is directed to nothing more than conventional activities capable of being done by hand with pen and paper—issuing and using an errata sheet to update an index—but shifted here to the context of online video streaming.

Finally, the '286 Patent does not describe any technological improvement to computers since the claims recite only generic functional language without providing sufficient implementation-related details as to *how* those functions are performed.  *See, e.g.*, Ex. A, claim 13 ("providing a computer system . . . receiving a set of video information . . . receiving a set of cue point information . . . receiving a cue point editing command . . . modifying a portion of the cue point information . . . receiving a cue point selection over the network . . . streaming the portion of the video information [.]"); *Erie*, 850 F.3d at 1328 (finding claims ineligible because they were "not focused on *how* usage of the XML tags alters the database in a way that leads to an improvement in the technology" but the "focus of the claims [] remain[ed] at a high level") (emphasis in original); *VideoShare*, 2016 WL 4137524 at *7 ("But claim 1 of each patent does not specify *how* these tasks are completed, but rather merely specifies *what* is to happen.") (emphasis in original); *In-Depth Test, LLC v. Maxim Integrated, Prods., Inc.*, No. 14-887-CFC, 2018 WL 6617142, at *6 (D. Del. Dec. 18, 2018) ("the patent simply claims a conventional computer that . . . is 'configured'" for certain functions) (citation omitted).

Thus, the '286 Patent claims fail step one of *Alice*.

**B.  *Alice* Step Two: The '286 Patent Claims Lack an Inventive Concept**

Under step two, "the relevant inquiry is not whether the claimed invention as a whole is unconventional or non-routine" instead the question is whether there is an "inventive concept" that is "'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 215).  Critically, "a claimed invention's use of the ineligible

concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *Id.*

The '286 Patent claims use "generic functional language to achieve the[] purported solutions." *Two-Way Media Ltd v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). For instance, claim 13 recites only generic and conventional components, *e.g.*, "a computer system having at least one computer-readable medium," "a server," "a public network," and "a client terminal." The specification confirms these components are generic: "***The application server 110 may be*** a dedicated server computer, a set or network of computers, an [sic] runnable file, or ***any other component capable of serving the desired program functions to a client***." (Ex. A, 7:1-4) (emphasis added); "These ***[client] terminals may comprise any device or application capable of accessing the system 100 in a useful way*** . . . like desktop computers, laptop computers, cell phones, personal digital assistants (PDA's), dedicated viewers, etc." (*id.*, 9:30-37) (emphasis added); "***The network 130 may be any public or private, wired or wireless network or set of networks*** . . . [and] may comprise any number of computers, configured as centralized or decentralized peer-to-peer networks, ad hoc networks, mesh networks, or any other useful configuration." (*id.*, 10:6-24) (emphasis added); 11:22-38; 53:44-52. This confirms that the '286 Patent claims lack an inventive concept. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) ("The claims at issue do not require any nonconventional computer, network, or display components[.]"); *In re TLI Commc'ns*, 823 F.3d at 614.

Nor do claim elements describing where routine computer components and functions are "disposed" or located (*e.g.*, "a video editing environment . . . being disposed at a server side of a public network," "a remote client terminal disposed at a client side of the public network," or "modifying a portion of the cue point information at the server side of the public network") provide

an inventive concept—they are merely expected configurations of a conventional video distribution or processing system. As discussed in Section IV.A., *supra*, a data-processing server being remote from a client terminal is akin to a librarian who is remote from a book publisher. Just as the client terminal can contact the server over a public network, the publisher can contact the librarian over a public telephone network. There is nothing "unconventional" about this standard client-server arrangement—it is the entire foundation of the Internet.

Further, the dependent claims recite only conventional components (*see* Section IV.A., *supra*) that merely perform additional routine data manipulation steps that do not provide an inventive concept that is significantly more than the recited abstract idea. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1349 (Fed. Cir. 2015) (additional limitations of the dependent claims held not to add an inventive concept, for "they represent merely generic data collection steps or siting the ineligible concept in a particular technological environment"); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Solutions*, No. 2:15-cv-01559-WCB, 2016 WL 2742379, at *11 (E.D. Tex. May 9, 2016) (finding that all dependent claims recite "functions that are not inventive, but simply constitute specific applications of the invention").

Lastly, there is also nothing "unconventional" about the ordering of the claimed steps. As with any typical data manipulation system, claim 13 of the '286 Patent recites routine steps for modifying cue point information that are performed in a predictable manner such as providing an editing environment, receiving an editing command, and then modifying the data. Additionally, the recited video playback steps are also predictably based on first receiving video and cue point information, selection of a cue point, and then streaming a portion of the video corresponding to the selected cue point. *See Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc*., No. 2:16-cv-00152-JRG-RSP, 2017 WL 1065938, at *21 (E.D. Tex. Mar. 7, 2017) (finding that claims fail

*Alice* step two when "no element or ordered combination of elements in the claims . . . is sufficient to ensure that the claims amount to anything more than patents upon the ineligible concept itself.").

Accordingly, the claims of the '286 Patent fail both steps of *Alice* and are invalid under 35 U.S.C. § 101.

### C.  The Allegations Added to the Amended Complaint Have No Effect on the Outcome of this Motion

As discussed in Sections IV.A and IV.B above, the '286 Patent claims are directed to the abstract idea of receiving and modifying chapter markers and do not recite an inventive concept that amounts to significantly more than the abstract idea.  Patent eligibility turns solely on the '286 Patent claims, which cannot be changed.  The unsupported attorney arguments and legal conclusions added to the Amended Complaint are nothing more than smoke and mirrors, amounting to no more than a belated (and futile) attempt to distract from the claims' abstractness.

### i.  Subject Matter Eligibility Depends on the Language of the Claims and not on the Contents of the Complaint or Patent Specification

Federal Circuit precedent is clear that, the "[t]he § 101 inquiry must focus ***on the language of the Asserted Claims themselves***."  *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016) (emphasis added); *see also*, *Accenture Global Servs., GmbH v. Guidewire Software, Inc*., 728 F.3d 1336, 1345 (Fed. Cir. 2013) (admonishing that "the important inquiry for a § 101 analysis is to look to the ***claim***") (emphasis added); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014) ("We focus here on whether the ***claims*** of the asserted patents fall within the excluded category of abstract ideas.") (emphasis added).  Despite this black letter law, WellcomeMat now tries to save its patent claims by amending the pleadings with unsupported allegations that do not even relate to the claim language to make it appear that the '286 Patent claims are directed to patent eligible subject matter.

16

ii.    **The Conclusory Allegations and Attorney Arguments in the Amended Complaint Should be Disregarded**

In a transparent effort to make up for the lack of necessary technological details in the '286 Patent claims, the Amended Complaint now alleges that "[the inventor's] goal was to provide technical- and software-based solutions to the issues facing online video distribution at the time" and that "[t]hough it is now ubiquitous, video chaptering was a major development—a game changer—in online video distribution" (Dkt. No. 25, ¶¶42, 46). Even if these allegations were true, the **_claims_** do not reflect such "game-chang[ing]" "technical- and software-based solutions." Indeed, the claims do not contain any language reflecting **_how_** video chaptering is implemented beyond generic components carrying out routine computer functions. *See supra*, Section IV.B.

For example, WellcomeMat now alleges that "then-existing network architectures made video chaptering too inefficient" and that "the '286 Patent discloses a new, non-conventional network architecture" (Dkt. No. 25, ¶¶47, 52).[8] Particularly, WellcomeMat conclusively alleges that its "network architecture" is new and non-conventional because it contains "a video server and a cue point server [that] are in operative communication with each other and with an application server (which is in operative communication with the video editing environment) and a network." *Id.*, ¶52. But **_none_** of this supposedly patent-eligible subject matter is found in any of the asserted claims. Independent claim 13 does not recite any servers whatsoever. Independent claim 21 only recites an application server. And independent claim 1 does not recite that the video server or cue point server are in communication with each other.

As another example, the Amended Complaint now asserts that prior art systems "did not

---

[8] WellcomeMat alleges several purported issues with "then-existing network architectures" in paragraphs 47-50 of the Amended Complaint but none of these issues is described in the '286 Patent specification nor do the claims describe any arrangement of components that addresses these issues. The specification instead focuses on the disadvantages of "learning to use a video editing system" (Ex. A, 2:24-25) and "find[ing] and compar[ing] video footage" (*id.*, 2:35-36).

use video servers and cue point servers to separately store videos from their associated cue points" (*id.*, ¶47) and instead "the video editor needed to add cue points to the video" (*id.*, ¶49) with "the cue point [] assembled with or embedded into the locally stored video itself" (*id.*, ¶50). The Amended Complaint alleges that the "'286 Patent is further directed at improving then-existing technological processes by . . . allow[ing] video editors to store video files and cue point files separately, while simultaneously retaining the ability to associate the two . . . through their specific identifiers, i.e., unique file names or other identifiers." *Id.* at ¶52. But again, this purported technological improvement is not found anywhere in the patent claims. None of the independent claims recite where video files or cue point files are stored, let alone that they are stored separately. Nor do the independent claims recite how video files and cue point files are associated with each other (or that they have unique names or identifiers).

Other supposed eligibility-conferring technical improvements are likewise not found anywhere in the claim language. The claims do not recite "cue point associations" that can be updated "after exit from the [video editing environment], or substantially in real time" "without replacing or modifying the original video file. *Id.* at ¶53. The claims are silent as to when cue point associations may be updated and do not mention whether a video file is replaced or modified. Nor do the patent claims recite how they enable "a video editor [to] upload and/or distribute the same video to multiple websites and add, delete, and/or modify associated cue points across all such websites at once." *Id.* at ¶55. The claims do not recite a website or the ability to add or delete cue points. Finally, the claims do not recite "generat[ing] video montages." *Id.* at ¶56.

Many of these newly alleged "improvements" are not supported by or even found anywhere in the specification of the '286 Patent. They should be outright ignored and given no consideration on that basis alone. But even if some of these features were found in the specification, none of

them appears in the ***actual language of the claim***.  *ChargePoint*, 920 F.3d at 769 ("[T]he specification cannot be used to import details from the specification if those details are not claimed . . . [and] ***any reliance on the specification in the § 101 analysis must always yield to the claim language***") (emphasis added); *Ericsson Inc. v. TCL Commun. Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 (Fed. Cir. 2020) (declining to import plaintiff's reference to "a specific, layered software architecture" from the specification as the "alleged inventive concept is not otherwise recited in the claims."); *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019) (holding that "any allegation about inventiveness, wholly divorced from the claims or the specification" does not defeat a motion to dismiss, only "plausible and specific factual allegations that ***aspects of the claims*** are inventive are sufficient.") (emphasis added).

WellcomeMat makes one lone attempt to tie these features to the claim language by alleging that claim 13 of the '286 Patent captures these features (*see* Dkt. No. 25, ¶54), but this attempt fails.  For example, as to the allegedly "new network architecture" repeatedly touted in the Amended Complaint, claim 13 merely recites "providing a computer system having at least one computer-readable medium"—*i.e.*, wholly generic computer components without any specific arrangement.  Even the claimed "video editing environment" is generic as it is not described with any specific details or functions.  Similarly, that certain components or functions are "disposed" or located at a "server side" or "client side" of a "public network" is not unique and is entirely conventional (server components are expectedly found on a server side of a network and client components on a client side of a network).  In sum, claim 13 is silent on ***any*** of the ***technical*** details that allegedly makes this "new network architecture" inventive and non-conventional.

Finally, the Amended Complaint alleges that the '286 Patent "further improves the ***computational and data efficiencies of the underlying computer(s)*** by requiring and utilizing less

bandwidth" and also "revolutionized" or "further enhances" the "***computer-dependent technology*** used to manage online video content" by providing "derivative information" or a "suggested cue points." *See* Dkt. No. 25, ¶¶57-59 (emphasis added). Not only are these features entirely absent from the '286 Patent claims, but the Amended Complaint also does not provide any supporting factual allegations as to ***how*** the '286 Patent claims allow for utilizing less bandwidth or can provide derivative information or suggested cue points. Nor is there any explanation as to ***why*** having these features serves to revolutionize or enhance ***computer-dependent*** technology.

### iii. Filing an Amended Complaint Serves No Purpose Other Than to Delay Resolution of this Motion

As discussed above, the Amended Complaint has no legal effect on the § 101 analysis. Filing of the Amended Complaint is essentially a nullity as the new allegations cannot change what the patent is or what the patent claims. This is purely a delay tactic intended to gain additional time to respond and to prolong resolution of Defendants' motion and should be treated as such.

## V.    CONCLUSION

For all the foregoing reasons, the Aylo Defendants respectfully request that the Court grant their Motion and dismiss Plaintiff's Amended Complaint with prejudice.

Dated: February 12, 2024

Respectfully submitted,

OF COUNSEL:

*/s/ Melissa R. Smith*
Melissa R. Smith
melissa@gillamsmithlaw.com
State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Phone: 903.934.8450
Facsimile: 903.934.9257

Frank M. Gasparo
FMGasparo@Venable.com
Ralph A. Dengler
RADengler@Venable.com
Jonathan M. Sharret (*pro hac vice*)
JMSharret@Venable.com
J. Daniel Kang (*pro hac vice*)
JDKang@Venable.com
Tom J. Macchio (*pro hac vice*)
TJMacchio@Venable.com

Venable LLP
151 W. 42nd Street
49th Floor
New York, NY 10036
(212) 307-5500

*Attorneys for Defendants Aylo Holdings S.à r.l.,*
*Aylo Freesites Ltd., Aylo Premium Ltd., and*
*9219-1568 Quebec Inc.*

**CERTIFICATE OF COMPLIANCE WITH THE COURT'S**
**35 U.S.C. § 101 MOTION PRACTICE ORDER**

_____ The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

___X___ The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

/s/ Ralph A. Dengler

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of the foregoing document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this February 12, 2024.

/s/ Melissa R. Smith
Melissa R. Smith

22