# EXHIBIT 9

███████████████

# George El-Khoury

| | |
|---|---|
| **From:** | Sharret, Jonathan M. <JSharret@Venable.com> |
| **Sent:** | Thursday, June 27, 2024 9:00 AM |
| **To:** | Andres Healy |
| **Cc:** | Gasparo, Frank M.; Kang, Daniel; George El-Khoury; Dengler, Ralph A.; Carswell, Samantha P.; Andrew Gorham; Melissa R. Smith; Aylo WellcomeMat Lit; Matthew R. Berry; John Schiltz; Claire A. Henry; Garrett Parish; Chris Henry; Madison Cooley; Michelle Wimmer |
| **Subject:** | RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions |

**EXTERNAL Email**

Andres,

We have carefully considered your response, but ultimately do not believe it addresses the concerns we raised.

As you are aware, Patent Rule 3-6(b) imposes a "good cause" standard for amendment. One of the factors considered under this standard is whether the movant was diligent or can explain its delay. We laid out for each of the three categories of WellcomeMat's proposed amendment why, in our view, WellcomeMat has not been diligent and that its delay cannot be reasonably explained (e.g., the information needed for the amendment has long been available publicly and Defendants have placed WellcomeMat on notice of the need to amend its contentions for months). Your email did not address this important point.

If WellcomeMat is willing to squarely address this issue, we are open to continuing the dialogue to try to reach resolution on this issue. If not, then our objection stands.

Best regards,
Jonathan

**Jonathan M. Sharret, Esq. | Venable LLP**
**t** 212.218.2266 | **f** 212.307.5598
151 W. 42nd Street, 49th Floor, New York, NY 10036

JSharret@Venable.com | www.Venable.com

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Tuesday, June 25, 2024 1:29 PM
**To:** Sharret, Jonathan M. <JSharret@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; George El-Khoury <GEl-Khoury@susmangodfrey.com>; Dengler, Ralph A. <RADengler@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

**Caution: External Email**

Jonathan,

1

Regarding your request, we already have provided you with our basis for amending. To repeat, we are supplementing first to provide additional detail/evidence in support of our theories to moot your complaint about our initial contentions—a position you are relying on to refuse to produce relevant discovery. To the extent that falls within what you term our "previously uncharted websites," as you know we disagree with that characterization. We also have told you that your request for "WellcomeMat's Rule 11 basis for alleging that the 13 [purportedly] uncharted websites infringe when it filed its initial Complaint on October 13, 2023," is both irrelevant to our motion and seeks privileged material that we have no obligation to disclose to you.

As for the second issue, we likewise already told you that we are amending based on the recent technical discovery that Aylo provided for the first time on May 22/23. In response, you point to a single statement regarding "tags." But as you know, Aylo has itself taken the position in this case that "tags" can refer to something other than Action Tags. You next point to your objections and our response to them. But Aylo has repeatedly made various representations in this case that have proven to be untrue. We thus were entitled to wait for Aylo to make its technical production available so we could confirm its infringement for ourselves based on the documents it produced. And that is exactly what we did—providing you with supplemental contentions just a few weeks later.

As for your third point, we likewise already have explained our position. To repeat: The amendment is the result of an investigation that took place after Aylo asserted in its April 15, 2024 motion to stay that WellcomeMat is a non-practicing entity. As explained, prior to that, we did not intend to assert that WellcomeMat practiced any asserted claim as we did not think it was going to be an issue in the case. Aylo's motion demonstrated otherwise—showing that Aylo intended to cast WellcomeMat as an NPE. Once we learned that, WellcomeMat promptly investigated whether it could assert that it practiced any "asserted claim" and then supplemented to disclose the result. As for your point about WellcomeMat's prior statements, they reflect what we told you, which is that WellcomeMat had a reasonable belief that its products practiced at least some of its claims but had not done the full technical analysis to confirm this belief with respect to any of the "asserted claims" until after April 15. *Forest Grp., Inc. v. Bon Tool Co.*, 590 F.3d 1295, 1300 (Fed. Cir. 2009) (noting that a party only needs to "have a reasonable belief that the articles were properly marked"). We likewise disagree with your claimed prejudice. Obviously, amendment always constitutes a change in position. More is required to constitute the undue prejudice needed to preclude amendment. *Arigna Tech. Ltd. v. Volkswagen AG*, No. 2:21-cv-00054-JRG-RSP, at *2 (E.D. Tex. Jan. 19, 2022). And here, Aylo has nothing more.

In sum, you have now had our proposed supplement for two weeks and previously told us on June 14 (a mere four days after we served them) that Aylo "object[s] to these amended infringement contentions" on the three grounds we identified. Accordingly, to the extent you have changed your mind and no longer object to any or all of our supplement, please let us know by end of day Wednesday. Otherwise, we will proceed with filing our motion.

To the extent you wish to discuss further, please call me directly. We otherwise disagree with your email for the reasons already explained.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON • LOS ANGELES • SEATTLE • NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

**From:** Sharret, Jonathan M. <JSharret@Venable.com>
**Sent:** Friday, June 21, 2024 4:42 PM
**To:** Andres Healy <AHealy@susmangodfrey.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; George El-Khoury <GEl-Khoury@susmangodfrey.com>; Dengler, Ralph A. <RADengler@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

EXTERNAL Email
Andres,

There were no personal attacks in my email. There were several misrepresentations of the record that I corrected; that does not amount to a personal attack.

You stated, "Rather than engage in further back and forth on those points, we'll have to simply agree to present our positions to the Court and let it resolve the issue." We believe that is not what the Court expects of the parties when meeting and conferring.

But, regardless, we cannot decide whether we are opposed to your motion for leave to amend based on the current record.

There are three issues that will be raised in your anticipated motion, as we understand it. One, leave to amend to chart the previously uncharted websites. Two, leave to amend to add claim 17. And, three, leave to amend to add WellcomeMat products that purportedly embody or practice the Asserted Patent. We made several arguments relating to each of these issues. We need to have WellcomeMat's responses in order to properly weigh each issue and determine whether we will oppose that issue or drop our objection.

We are hopeful that WellcomeMat will respond. Once WellcomeMat does so, we will promptly relay, for each issue, whether we are opposed.

Best regards,
Jonathan

**Jonathan M. Sharret, Esq. | Venable LLP**
t 212.218.2266 | f 212.307.5598
151 W. 42nd Street, 49th Floor, New York, NY 10036

JSharret@Venable.com | www.Venable.com

**From:** Andres Healy <AHealy@susmangodfrey.com>
**Sent:** Thursday, June 20, 2024 9:17 PM
**To:** Sharret, Jonathan M. <JSharret@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; George El-Khoury <GEl-Khoury@susmangodfrey.com>; Dengler, Ralph A. <RADengler@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley

3

<MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>; Andres Healy <AHealy@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

**Caution: External Email**

Jonathan,

The rhetoric and personal attacks (a recurring issue in communications from your side) is both unnecessary and unprofessional. We ask again that you please discontinue. As for the substance of your email, suffice to say that we disagree with both your characterizations of us and the history of our exchanges/disclosures; we also disagree with your view on the merits of our motion. Rather than engage in further back and forth on those points, we'll have to simply agree to present our positions to the Court and let it resolve the issue. That includes your new request for "WellcomeMat's Rule 11 basis for alleging that the 13 [purportedly] uncharted websites infringe when it filed its initial Complaint on October 13, 2023." Not only is your request irrelevant to our motion, but it seeks privileged material that we have no obligation to disclose to you. We also are hard pressed to understand your point about WellcomeMat agreeing to provide its "technical documents related to WellcomeMat's products." In particular, on our call I specifically told you that we would consider your request for such materials (which you made for the first time yesterday) notwithstanding Aylo's position on our motion and let you know by end of day Friday whether WellcomeMat would agree to produce such materials. And that's exactly what we did.

In closing, our understanding is that Aylo is opposed to our motion to amend. If that is incorrect, please let us know by end of day tomorrow. As always, feel free to call me with any questions.

**Andres C. Healy | Susman Godfrey LLP**
206.505.3843 | ahealy@susmangodfrey.com
401 Union Street | Suite 3000 | Seattle, WA 98101
**HOUSTON • LOS ANGELES • SEATTLE • NEW YORK**

*This message may be protected by the attorney client privilege or the work product doctrine.*

---

**From:** Sharret, Jonathan M. <JSharret@Venable.com>
**Sent:** Wednesday, June 19, 2024 5:07 PM
**To:** George El-Khoury <GEl-Khoury@susmangodfrey.com>; Dengler, Ralph A. <RADengler@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Andres Healy <AHealy@susmangodfrey.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

EXTERNAL Email

4

George,

This is not even remotely a "summary of our discussion" but rather a self-serving recitation of WellcomeMat's positions and an outright distortion of the record, in some cynical attempt to set up WellcomeMat's arguments for its anticipated motion for leave to amend.  This does not at all reflect our discussion nor my careful delineation of Defendants' positions during today's call and during our previous discussions and emails regarding WellcomeMat's deficient infringement contentions.

This is hardly the first time WellcomeMat has twisted what was said during a meet and confer.  Just two weeks ago the parties met and conferred and reached an agreement to resolve WellcomeMat's motion to compel venue discovery, after which WellcomeMat simply rewrote that entire agreement, claiming that this new version was actually what was agreed to.  We will therefore likely need to bring on a transcription service to transcribe meet and confers to end this gamesmanship and ensure that the record is correct.  We will be in touch in this regard.

As to the substance of our conversation, we respond to each of your points below:
> Aylo said it first objects to WellcomeMat's supplementation to provide additional detail/evidence regarding the accused websites you previously asserted we did not sufficiently chart in our original contentions—in particular, the functionality of Aylo's premium pay web sites. As you know, we disagree with that position.
>> This is **untrue**.  We have consistently told you, including on today's meet and confer, that our objection is that the majority of the accused websites were wholly uncharted – not that there was a lack of detail with respect to those websites.  As such, the entirety of this paragraph is a distortion of our conversation.
>>
>> Our objection to your infringement contentions dates back to at least our email of **March 22**, which stated "we note that WellcomeMat has only charted the Pornhub, Redtube, YouPorn, and Thumbzilla websites in its Infringement Contentions."  Your initial infringement contentions contained no information whatsoever as to any accused website other than Pornhub, Redtube, YouPorn, and Thumbzilla.  Our complaint was **not** that you need to "provide *additional* detail/evidence regarding the accused websites" but rather that you had provided *nothing at all*, in violation of Patent Rule 3-1(c).
>>
>> This was explained to you repeatedly.  For example, in an email of **March 25**: "WellcomeMat did not chart these websites as it was required to do in its Infringement Contentions.  *See* Local Patent Rule 3-1(b) and (c)").  And again on **April 17**, stating "As to the other 13 websites you claim are accused (Pornhub Premium, YouPorn Premium, Redtube Premium, Tube8, ModelHub, XTube, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com), we can only find a single reference to these websites in your contentions" and disputing that you had set forth a theory of representativeness.  On **May 6**, we noted WellcomeMat never responded to our April 17 email.  Then on **May 9** you said you would supplement the contentions. We objected again, this time in response to WellcomeMat's interrogatories on **May 23** ("Plaintiff's March 11, 2024, Infringement Contentions ("Infringement Contentions") have only charted the Pornhub, Redtube, YouPorn, and Thumbzilla websites and have only alleged infringement with respect to an action tag functionality purportedly found on those websites. The Tube8, Brazzers, MOFOS, Babes.com, Twistys.com, Men.com, Reality Kings, and DigitalPlayground.com websites do not have or make use of the action tag functionality that Plaintiff's Infringement Contentions allege is found on the Pornhub, Redtube, YouPorn, and Thumbzilla websites and Plaintiff has not properly identified any other allegedly infringing functionality with respect to these websites.").  You finally endeavored to supplement the deficient contentions on **June 10**, nearly 3 months after we raised this issue.

> In its original charts, WellcomeMat identified the same Aylo websites—identifying each by name (including the pay sites) and providing a narrative description of Aylo's infringement, including by providing four non-limiting examples of Aylo's infringement. *E.g.*, WM Contentions, Ex. 1 at 1, 3. And so that there was no confusion, we explained that those examples were "representative of how each Accused Product infringes the '286 Patent." *Id*.

5

> Again, as explained, identifying what is accused is a requirement of Patent Rule 3-1(b) ("Each product, device, and apparatus must be identified by name or model number, if known.").
>
> Your initial infringement contentions were deficient **at least because they violated Patent Rule 3-1(c)** which requires "A chart identifying specifically where each element of each asserted claim is found within each Accused Instrumentality". WellcomeMat indisputably only charted four of the accused websites (what you term "four non-limiting examples of Aylo's infringement") and contained not a single word of explanation as to how the other 13 accused websites purportedly infringed. As explained in depth in our April 17 email, simply stating the word "representative" is plainly insufficient. WellcomeMat *never* responded to this email and *never* disputed our citation to this Court's clear jurisprudence regarding plaintiff's burden when seeking to not chart each Accused Instrumentality due to purported representativeness – a burden that WellcomeMat never came close to meeting.
>
> WellcomeMat's initial infringement contentions did not even state that the four charted websites were representative of the other 13 accused websites, let alone explain the basis for asserting representativeness as between the four charted websites on the one hand and the other 13 non-charted accused websites on the other hand. And, tellingly, in its supplemental infringement contentions, WellcomeMat does not try to make this assertion either or provide any evidence or explanation of representativeness.
>
> Furthermore, even now WellcomeMat has still not provided any charts for several of the accused websites in its supplemental infringement contentions, including: YouPorn Premium, Redtube Premium, ModelHub, XTube, Babes.com, Twistys, and Men.com.
>
> Finally, as explained during today's meet and confer, the very notion of representativeness is untenable and has no basis in reality. The four charted websites (Pornhub, Redtube, YouPorn, and Thumbzilla) do not share the same architecture or design with all of the other 13 accused websites. Specifically, as explained, the only functionality that is accused for adding and editing action tags is the Pornhub Video Manager, which is simply not part of the architecture for all of the 13 accused websites. This would be immediately obvious to WellcomeMat if it actually visited and used each of the accused websites; see more on this point below.

In short, our original contentions were more than sufficient. As also explained, to moot the issue, we nevertheless supplemented to provide the additional detail you claimed was lacking, including by citing evidence from your recent May 22/23 productions/discovery responses.

> If WellcomeMat truly believes its initial infringement contentions "were more than sufficient" than WellcomeMat should be willing to proceed "as is" and without its requested supplementation.
>
> You claim WellcomeMat's supplement was only made possible by Defendants' "May 22/23 productions/discovery responses." If so, what then was WellcomeMat's Rule 11 basis for alleging that the 13 uncharted websites infringe when it filed its initial Complaint on October 13, 2023?
>
> As you know, Rule 11 requires: "By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) **the claims, defenses, and other legal contentions are warranted by existing law** . . . (3) **the factual contentions have evidentiary support** or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."
>
> As such, explain what evidentiary support WellcomeMat had for accusing the 13 uncharted websites at the time it filed its initial Complaint on October 13, 2023, including providing the following:

6

1) When did WellcomeMat obtain a membership/login credentials to each of the following websites: Pornhub Premium, Redtube Premium, YouPorn Premium, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com
2) Confirm that WellcomeMat visited each of the 17 accused websites and watched at least one video on each site that has what WellcomeMat contends is an action tag before filing its initial Complaint on October 13, 2023.
3) What evidentiary support did WellcomeMat have when it filed its initial Complaint that all of 17 accused websites infringed in the exact same manner, as indicated by WellcomeMat grouping all such websites together as "'286 Accused Platforms" – *see, e.g.*, initial Complaint at 14-15 – and presenting only a single theory of infringement for all such websites?  Specifically:
    a. What evidentiary support did WellcomeMat have when it filed its initial Complaint and alleged that all of the accused websites infringed because **all of the accused websites use the Pornhub website's Video Manager to receive a video file** (*see, e.g.*, initial Complaint at 16: "Further, the '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of receiving a video file from a content partner, who, for example, submits the video to Pornhub through the Video Manager page")?
    b. What evidentiary support did WellcomeMat have when it filed its initial Complaint and alleged that all of the accused websites infringed because **all of the accused websites use the Pornhub website's Video Manager to add action tags to a video** (*see, e.g.*, initial Complaint at 17: "The '286 Accused Platforms are also configured to perform, and are used by MindGeek to perform, a method of receiving a set of cue point information, which MindGeek calls 'Action Tags,' from—for example—a Pornhub content partner through the Video Manager page.")?
    c. What evidentiary support did WellcomeMat have when it filed its initial Complaint and alleged that all of the accused websites infringed because **all of the accused websites use the Pornhub website's Video Manager to edit action tags for a video** (*see, e.g.*, initial Complaint at 17: "In addition, the '286 Accused Platforms are configured to perform, and are used by MindGeek to perform, a method of receiving a cue point editing command over the network from a remote client terminal disposed at a client side of the public network using the computer system. For example, the Video Manager page enables a content partner to send a cue point editing command to a MindGeek owned or provisioned server by adding, modifying, and/or deleting cue points.")?

If WellcomeMat performed a proper Rule 11 investigation into the purported infringement of the 13 uncharted websites before filing the initial Complaint, then please explain why none of this information was included in WellcomeMat's initial infringement contentions.

Aylo said it also objects to WellcomeMat amending its contentions to assert Claim 17. But as explained, WellcomeMat only recently obtained evidence concerning Aylo's AI system and functionality when Aylo served its interrogatory responses and document production on May 22/23. We thus supplemented within a matter of weeks to assert Claim 17 based on that newly produced evidence.

> Again, this is **a complete distortion**.  We have explained to you numerous times before that information regarding Defendants' artificial intelligence tagging system has long been public.
>
> > WellcomeMat is well-aware that this information is public.  In fact, WellcomeMat even cited to public documentation regarding Defendants' AI tagging system in its initial infringement contentions on **March 11**.  On page 13 you cited to https://help.pornhub.com/hc/en-us/articles/4419860542483-Video-Tags.  On that page it clearly states under the heading "Action Tags" that "Once the video has been uploaded and has successfully converted, **all tags will be added automatically**."

7

>We even pointed this out to WellcomeMat in our objections to WellcomeMat's first set of venue interrogatories on **March 14**, citing to this same website as well as a **April 2017 press release** regarding the development of this tagging system: "Action tags are instead automatically generated by an artificial intelligence system that has been in existence and operating on the Accused Platforms since at least February 2019. See https://help.pornhub.com/hc/en-us/articles/4419860542483-Video-Tags ("Once the video has been uploaded and has successfully converted, **all tags will be added automatically**."); https://www.pornhub.com/press/show?id=1362 ("Pornhub, the premiere online destination for adult entertainment, **today announced the launch of an Artificial Intelligence (AI) powered model** that detects over 10,000 pornstars in videos using computer vision. . . . Within the next year, Pornhub plans on scanning all 5 million videos currently on its platform and will also start scanning for category and **tag detection in the videos**. . . . Furthermore, **the model will also be able to detect various sex positions and be able to properly tag them**.")."
>
>WellcomeMat acknowledged this on **March 20**, stating "Aylo cannot deny discovery based on its conclusory and unsupported assertion that several websites do not infringe, either because the sites purportedly no longer exist, do not use Action Tags, **or generate Action Tags using artificial intelligence**. Please confirm Aylo is not withholding any information based on this objection."
>
>As such, even just considering the limited timeline of the litigation itself, **it has been months and not "a matter of weeks"** since WellcomeMat was aware of Defendants' AI tagging system.

Aylo said it also objects to WellcomeMat amending its contentions to set forth its amended position regarding whether its products practice any of the asserted claims. But as explained on the call, that position is the result of an investigation that took place after Aylo asserted in its April 15, 2024 motion to stay that WellcomeMat is a non-practicing entity. Prior to that, WellcomeMat had not undertaken any investigation because it had no reason to do so. Once we learned of Aylo's position, WellcomeMat promptly undertook that investigation and is supplementing to disclose the result.

>Once more, this is a **misrepresentation of our conversation**. We clearly explained to you that the time for performing an investigation into WellcomeMat's own products was at least prior to service of its initial infringement contentions as Patent Rule 3-1(f) states that "**If a party claiming patent infringement wishes to preserve the right to rely, for any purpose**, on the assertion that its own apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party must identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim." But this work should also have been done as part of WellcomeMat's pre-filing Rule 11 investigation, especially considering the allegations WellcomeMat makes in its initial Complaint concerning its "Story."
>
>There is no rule that WellcomeMat can defer such investigation until after it is called an NPE in order to refute such a charge. By not timely investigating its own products, WellcomeMat did not "preserve the right to rely" on any of these products and gave up this right.
>
>But it is doubtful that WellcomeMat simply had no idea, and had not undertaken any prior investigation, as to whether its products practice its own patents. Indeed, on WellcomeMat's website on the bottom of the homepage it states "Products and services covered by patents: 8,170,395 & 8,307,286." Similar language is found throughout WellcomeMat's website, for example: https://go.wellcomemat.com/about ("WellcomeMat patented technologies are used to..."), https://go.wellcomemat.com/blog/triangle-mls-wellcomemat-partnership ("WellcomeMat is maximizing media distribution dond consumer reach by providing the largest library of high-quality property videos through its patented technologies to help digital marketers, creatives and developers build the future of visual search.").

> If it is true that WellcomeMat did not investigate until after April 15, 2024, then explain why WellcomeMat was making these claims on its website prior to that date.

Moreover, when asked what prejudice Aylo would suffer from our amendment, Aylo's only response was to ask if WellcomeMat would provide technical documents related to WellcomeMat's products—a request it had not previously made. You also contended that WellcomeMat must produce these materials regardless of the amendment. We confirm that we will. We expect to complete that production by July 10, though we will endeavor to do so by July 3. In addition, we expect to make any source code available in SG's Seattle office by the same date.

> Once more this **does not reflect what was said during our call**. First, the issue of prejudice is clear and we have explained it to you before. For example, in the same Motion to Stay that you referenced, we noted that Patent Rule 3-1(f) states that if a party does not identify any of its products that practice the patents it cannot rely on these products "for any purpose." Clearly, being able to now rely on these products, when WellcomeMat could not previously, is prejudicial.
>
> You also have now completely reversed positions from what you stated during the meet and confer, omitting from your "summary" that during our call you steadfastly refused to produce any of this information. We argued that WellcomeMat must produce materials related to its products and you repeatedly refused, insisting you would only do so if Defendants dropped their objection to this amendment. We are glad WellcomeMat has recognized that such a position is not supported by the law, as Defendants pointed out that such materials are doubtlessly related to the issue of damages as several *Georgia-Pacific* factors explicitly reference a patentee's own products (*see, e.g.*, factors 6, 8, 9, and 10) and that these materials should have been produced regardless pursuant to Patent Rule 3-2.

We look forward to your response to this correspondence.

Best regards,
Jonathan

**Jonathan M. Sharret, Esq. | Venable LLP**
t 212.218.2266 | f 212.307.5598
151 W. 42nd Street, 49th Floor, New York, NY 10036

JSharret@Venable.com | www.Venable.com

**From:** George El-Khoury <GEl-Khoury@susmangodfrey.com>
**Sent:** Wednesday, June 19, 2024 3:40 PM
**To:** Sharret, Jonathan M. <JSharret@Venable.com>; Dengler, Ralph A. <RADengler@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Andres Healy <AHealy@susmangodfrey.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

**Caution: External Email**

Jonathan, Ralph –

Thank you for the call today concerning WellcomeMat's supplemental contentions, which were served on June 10, 2024. Please see below a summary of our discussion, including the three objections you raised. To the extent you disagree, please let us know. As noted, WellcomeMat will be moving for leave to supplement its contentions.

1. Aylo said it first objects to WellcomeMat's supplementation to provide additional detail/evidence regarding the accused websites you previously asserted we did not sufficiently chart in our original contentions—in particular, the functionality of Aylo's premium pay web sites. As you know, we disagree with that position. In its original charts, WellcomeMat identified the same Aylo websites—identifying each by name (including the pay sites) and providing a narrative description of Aylo's infringement, including by providing four non-limiting examples of Aylo's infringement. *E.g.*, WM Contentions, Ex. 1 at 1, 3. And so that there was no confusion, we explained that those examples were "representative of how each Accused Product infringes the '286 Patent." *Id*. In short, our original contentions were more than sufficient. As also explained, to moot the issue, we nevertheless supplemented to provide the additional detail you claimed was lacking, including by citing evidence from your recent May 22/23 productions/discovery responses.

2. Aylo said it also objects to WellcomeMat amending its contentions to assert Claim 17. But as explained, WellcomeMat only recently obtained evidence concerning Aylo's AI system and functionality when Aylo served its interrogatory responses and document production on May 22/23. We thus supplemented within a matter of weeks to assert Claim 17 based on that newly produced evidence.

3. Aylo said it also objects to WellcomeMat amending its contentions to set forth its amended position regarding whether its products practice any of the asserted claims. But as explained on the call, that position is the result of an investigation that took place after Aylo asserted in its April 15, 2024 motion to stay that WellcomeMat is a non-practicing entity. Prior to that, WellcomeMat had not undertaken any investigation because it had no reason to do so. Once we learned of Aylo's position, WellcomeMat promptly undertook that investigation and is supplementing to disclose the result. Moreover, when asked what prejudice Aylo would suffer from our amendment, Aylo's only response was to ask if WellcomeMat would provide technical documents related to WellcomeMat's products—a request it had not previously made. You also contended that WellcomeMat must produce these materials regardless of the amendment. We confirm that we will. We expect to complete that production by July 10, though we will endeavor to do so by July 3. In addition, we expect to make any source code available in SG's Seattle office by the same date.

**George R. El-Khoury** | **Susman Godfrey LLP**
One Manhattan West, 50th Floor
New York, NY 10001
Office: (212) 729-2063
Cell: (908) 337-1312

---

**From:** Sharret, Jonathan M. <JSharret@Venable.com>
**Sent:** Friday, June 14, 2024 5:45 PM
**To:** George El-Khoury <GEl-Khoury@susmangodfrey.com>; Dengler, Ralph A. <RADengler@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Andres Healy <AHealy@susmangodfrey.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Subject:** RE: WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

EXTERNAL Email

George,

Defendants object to these amended infringement contentions. There are several additions that we do not think are warranted, including:
1) Assertion of a new claim, claim 17.
2) Assertion that WellcomeMat now does have products that practice the claimed invention.
3) Charting of websites that were not charted previously.

Please be prepared to discuss during the parties' upcoming meet and confer.

Best regards,
Jonathan

**Jonathan M. Sharret, Esq. | Venable LLP**
t 212.218.2266 | f 212.307.5598
151 W. 42nd Street, 49th Floor, New York, NY 10036

JSharret@Venable.com | www.Venable.com

**From:** George El-Khoury <GEl-Khoury@susmangodfrey.com>
**Sent:** Monday, June 10, 2024 10:04 PM
**To:** Dengler, Ralph A. <RADengler@Venable.com>; Sharret, Jonathan M. <JSharret@Venable.com>
**Cc:** Gasparo, Frank M. <FMGasparo@Venable.com>; Kang, Daniel <JDKang@Venable.com>; Carswell, Samantha P. <SPCarswell@Venable.com>; Andrew Gorham <tom@gillamsmithlaw.com>; Melissa R. Smith <melissa@gillamsmithlaw.com>; Aylo WellcomeMat Lit <AyloWellcomeMatLit@Venable.com>; Andres Healy <AHealy@susmangodfrey.com>; Matthew R. Berry <mberry@SusmanGodfrey.com>; John Schiltz <jschiltz@SusmanGodfrey.com>; Claire A. Henry <claire@wsfirm.com>; Garrett Parish <gparish@wsfirm.com>; Chris Henry <CHenry@susmangodfrey.com>; Madison Cooley <MCooley@susmangodfrey.com>; Michelle Wimmer <MWimmer@susmangodfrey.com>
**Subject:** WellcomeMat v. Aylo - WellcomeMat's Amended Contentions

**Caution: External Email**

Counsel,

Per Aylo's request, attached are amended contentions. For your convenience, also attached are redlines reflecting all changes. Please confirm that Aylo does not oppose WellcomeMat's request to serve these contentions pursuant to Paragraph 3(A)(i) of the Discovery Order and Rule 3-6(b) of the Local Patent Rules. To the extent Aylo opposes, please let us know your availability this week for a lead/local.

**George R. El-Khoury** | **Susman Godfrey LLP**
One Manhattan West, 50th Floor
New York, NY 10001
Office: (212) 729-2063
Cell: (908) 337-1312

*************************************************************************
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
*************************************************************************

11

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This electronic mail transmission may contain confidential or privileged information. If you believe you have received this message in error, please notify the sender by reply transmission and delete the message without copying or disclosing it.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*