# EXHIBIT 16

# Susman Godfrey l.l.p.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
SUITE 3000
401 UNION STREET
SEATTLE, WASHINGTON 98101-2683
(206) 516-3880
FAX (206) 516-3883
WWW.SUSMANGODFREY.COM

_____

| Suite 5100 | Suite 1400 | One Manhattan West |
| 1000 Louisiana Street | 1900 Avenue of the Stars | New York, New York 10001-8602 |
| Houston, Texas 77002-5096 | Los Angeles, California 90067-6029 | (212) 336-8330 |
| (713) 651-9366 | (310) 789-3100 | |

Andres Healy
Direct Dial (206) 505-3843

E-Mail ahealy@susmangodfrey.com

April 17, 2024

<u>VIA E-MAIL</u>

Melissa R. Smith
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670

Ralph A. Dengler
Frank M. Gasparo
Jonathan M. Sharret
J. Daniel Kang
Tom J. Macchio
VENABLE LLP
151 West 42nd Street, 49th Floor

Re:   *WellcomeMat, LLC v. Aylo Holdings S.à r.l. et al.*, Case No. 2:23-cv-483-RG-RSP.

Dear Counsel:

We write in advance of the parties' commencement of production of documents relevant to this litigation. As you know, in the Eastern District of Texas formal document requests are unnecessary in patent cases as the parties are obligated under Paragraph 3 of the Discovery Order to disclose to each other all non-privileged "relevant" documents. To aid in your production of such materials, below we set forth a preliminary, non-exhaustive list of Aylo documents relevant to this case.

In addition, we understand that Aylo claims that its accused products do not infringe the '286 Patent because, according to Aylo, Content Partners and/or Users of such web sites no longer have the ability to add, remove, and/or modify Action Tags or cue points and that, instead, such functions are performed automatically through an artificial-intelligence system. To be clear, to the extent Aylo believes its artificial-

April 17, 2024
Page 2

intelligence system does not infringe the '286 Patent, documents and source code relating to that system are plainly relevant to this Litigation and must be produced. Likewise, Aylo must produce documents and source code relating to an Aylo Administrator's ability to add, remove, and/or modify Action Tags or cue points under both its former system and its artificial-intelligence system, as such documents and source code are also plainly relevant to WellcomeMat's claims and Aylo's defenses.

Each item on this list should be construed independently, and no item shall be viewed as limiting the scope of any other item. Further, to the extent there is any disagreement between the parties about the proper method to request documents, please also consider this letter a formal request for production under the Rules.

For purposes of this letter, the following definitions apply:

- The term "'395 Patent" refers to U.S. Patent No. 8,170,395 B2, including the application on which it issued and its entire prosecution history.

- The term "'780 Patent" refers to U.S. Patent No. 9,965,780 B2, including the application on which it issued and its entire prosecution history.

- The term "Accused Platforms" refers to the Accused Platforms as described in WellcomeMat's Amended Complaint, Dkt. No. 25, including those servers/software utilized by Aylo to offer an online video platform that enables Content Partners and/or Aylo Administrators to upload video files and/or add, modify, and delete video cue point information associated with those files, which enables visitors of such website to select and utilize such cue points to find, watch/stream, and share desired content. The "Accused Platforms" include, but are not limited to, Pornhub, Pornhub Premium, YouPorn, YouPorn Premium, RedTube, Redtube Premium, Tube8, Thumbzilla, ModelHub, XTube, Brazzers, MOFOS, Babes.com, Twistys, Men.com, RealityKings.com, and DigitalPlayground.com.

- The term "Action Tags" refers to the cue point information that marks indexed time positions or key frames of video content uploaded onto any of Your web sites, including what You have defined as "indicators you can add to your video's player bar to help users get to their favorite parts easily," as described in WellcomeMat's Amended Complaint, Dkt. No. 25.

- The terms "Aylo," "Defendants," "You," or "Your" means collectively and/or individually Defendants Aylo Holdings S.à r.l., Aylo Freesites Ltd., Aylo Premium, Ltd., and 9219-1568 Quebec, Inc., including any of their

April 17, 2024
Page 3

    past and present parents, subsidiaries, affiliates, divisions, predecessors, successors or assignees, and their respective officers, directors, employees, consultants, representatives, agents, attorneys, or anyone acting or purporting to act on their behalf or under their control. To be clear, the term "Aylo," "Defendants," "You," or "Your" includes, but is not limited to, Aylo Global Entertainment, Inc., Aylo USA Incorporated, Aylo Billing US Corp., and Aylo Holdings USA Corp.

- The term "Aylo Administrator" means any employee, consultant, representative, agent, attorney, or anyone acting or purporting to act on Aylo's behalf or under its control, who may or has engaged in content moderation on any web site owned, controlled, and/or administered by Aylo, including by reviewing, adding, removing, and/or modifying Action Tags and/or cue points related to video content uploaded onto such web sites.

- The term "communication(s)" refers to any transmission of information between persons by any means or medium, whether in original, draft, or copy form, whether stored in hard copy, on tape, or electronically, and whether oral or in writing, including: conversations; meeting; correspondence; electronic mails; electronic chats; telexes; facsimile transmissions; telecopies; recordings; telephone or message logs; notes or memoranda; and any translations.

- The term "Complaint" shall mean the Complaint for Patent Infringement (Dkt. No. 1) filed by WellcomeMat in this action on October 13, 2023, and any subsequent amendments to that Complaint.

- The term "concerning," when referring to any given subject matter, means without limitation any information, document, or thing that in whole or in part directly or indirectly relates to, concerns, regards, discusses, describes, depicts, demonstrates, shows, evidences, supports, refutes, contradicts, summarizes, analyzes, bears upon, comments upon, pertains to, constitutes, comprises, involves, contains, embodies, reflects, alludes to, identifies, states, mentions, refers to, deals with, or is in any way relevant to the particular subject matter identified.

- The term "Content Partner" means any user of the Pornhub website or other Accused Platforms who has joined Your Content Partner Program or Model Partner Program as described in WellcomeMat's Amended Complaint, Dkt. No. 25, and in Pornhub's Terms of Service, https://www.pornhub.com/information/terms#terms.

April 17, 2024
Page 4

- The term "Cue-Point Method(s) or System(s)" refers to Aylo's Accused Platforms, all methods and systems reasonably similar to those accused in WellcomeMat's disclosures pursuant to Local Patent Rule 3-1 served on March 11, 2024 (as may be amended), and any other products, systems, devices, operations, and/or methods that use Action Tags that may be added, removed, and/or modified from the server-side of a public network. For the avoidance of doubt, the term "Action Tags" includes cue points that may be added, removed, and/or modified automatically by, among other things, artificial intelligence systems.

- The term "document(s)" refers to and includes all "documents or electronically stored information" and any "tangible thing" that falls within the scope of Federal Rule of Civil Procedure 34(a). Each non-identical copy of a "document" shall be treated as a separate "document" within the meaning of this term.

- The term "employee" refers to any current or former, full- or part-time, flex or seasonal employees, contractors, volunteers, interns, lobbyists, officers, directors, and other agents and/or representatives.

- The term "Infringement Contentions" refers to WellcomeMat's disclosures pursuant to Local Patent Rule 3-1 served on March 11, 2024, as well as any amendments made to those disclosures thereafter.

- The terms "made," "make," or "manufacture" shall include research, design, development, manufacture, construction, assembly, and all other methods of planning and/or fabricating the product, system, or method whether or not it occurs in the normal course of business or whether or not revenue was or will be received therefrom.

- The term "Named Inventor(s)" refers to Christian Sterner, Phil Di Giulio, and Haider Zainy.

- The term "Patent-in-Suit" refers to the patent identified as "'286 Patent" in WellcomeMat's Amended Complaint (as may be amended) and/or disclosures pursuant to Local Patent Rule 3-1 served on March 11, 2024 (as may be amended). This presently includes U.S. Patent No. 8,307,286 B2. When any WellcomeMat patent is referred to in these interrogatories, that reference is intended to include the application on which it issued, its entire prosecution history, and all foreign counterparts, including foreign applications and foreign prosecution histories.

April 17, 2024
Page 5

- The term "person" refers to and includes both natural persons and entities, including individual proprietorships, partnerships, corporations, associations, joint ventures, and other organizations, and their respective officers, directors, employees, representatives, and/or agents.

- The term "prior art" includes by way of example and without limitation, the subject matter described in 35 U.S.C. §§ 102 and 103, including, without limitation, publications, physical devices, prototypes, uses, sales, and offers for sale and any documents or thing evidencing any of the foregoing.

- The terms "sale," "sales," "sell" or "sold" shall include sales, licenses, leases, loans, consignments, distribution to resellers or others and all other methods of product or system distribution whether direct or indirect, and whether the product or system is distributed singly or in combination with or as part of another product or system, and whether or not revenue was or will be received therefrom.

- The term "Scorpcast Litigation" refers to all litigation matters to which You were a party concerning the '780 Patent and its related patents, including but not limited to the Scorpcast IPR Petition and *Scorpcast, LLC dba HaulStars v. MG Freesites Ltd.*, No. 6:20-cv-00877 (W.D. Tex.); *MG Freesites Ltd. v. Scorpcast, LLC dba HaulStars*, No. 1:20-cv-01012 (D. Del.); and *Scorpcast, LLC dba HaulStars v. MG Freesites Ltd.*, No. 1:21-cv- 00887 (D. Del.).

- The term "Scorpcast IPR Petition" refers to Aylo Freesites Ltd.'s Petition for *Inter Partes* Review of U.S. Patent No. 9,965,780, filed on September 28, 2020, before the Patent Trial and Appeal Board, and any filings You made relating to that petition.

- The term "This Litigation" refers to *WellcomeMat, LLC v. Aylo Holdings S.à r.l., et al.*, Case No. 2:23-cv-483-JRG-RSP.

- The terms "use," "using," or "used" shall include use, demonstration, testing, operating, use for training, and all other methods of physically utilizing the product, system, or method whether or not it occurs in the normal course of business or whether or not revenue was or will be received therefrom.

- The term "User" refers to any individual who visits any web site owned, controlled, administered, and/or maintained by You.

April 17, 2024
Page 6

- The terms "WellcomeMat" or "Plaintiff" means collectively and/or individually WellcomeMat, LLC and any of its predecessors, successors, officers, directors, employees, agents, attorneys, and persons acting or purporting to act on its behalf.

We request that you produce the following documents relevant to this case:

1. All documents mentioning or concerning the Patent-in-Suit, the '395 Patent, and/or the '780 Patent or their respective applications—including documents indicating when you became aware of any of each, and which of Your employees and/or agents became aware of any of each.

2. All communications concerning this Litigation.

3. All documents You produced or relied on in the Scorpcast Litigation.

4. All documents concerning or relating to all settlement agreements, releases, or licenses executed by You to resolve the Scorpcast Litigation.

5. All documents that reference or concern the Named Inventors and/or WellcomeMat.

6. All communications that reference or concern the Named Inventors and/or WellcomeMat.

7. All documents furnished to or shown to any fact witness contacted, interviewed, or consulted by Aylo in connection with the Patent-in-Suit.

8. All communications You had with any non-party witness or third-party regarding this Litigation, WellcomeMat, prior art, and/or the Patent-in-Suit.

9. Documents sufficient to identify and describe all of Your web sites that use or have used Action Tags and/or cue points from October 13, 2017, to the present, including (a) when each web site began using Action Tags or cue points; and (b) when a web site stopped using Action Tags or cue points, if ever.

10. All documents concerning or relating to Aylo's research, design, development, and/or implementation of (a) Action Tags and/or Cue Points on each of Your web sites; (b) Cue-Point Method(s) or System(s); and (c) the Accused Platforms.

April 17, 2024
Page 7

11. All documents concerning or relating to any changes or updates to the use or implementation of Action Tags or cue points on each Accused Platform that You contend were material to their implementation.

12. All documents concerning your alleged decision not to use Action Tags and/or cue points on certain of Your web sites, including Twisty's, Men.com, and any other web site that allegedly does not use Action Tags and/or cue points.

13. All documents concerning the ability of an Aylo Administrator, Content Partner, and/or User of any of Your web sites to add, remove, and/or modify Action Tags and/or cue points, including the process for and devices and/or instrumentalities used in adding, removing, and/or modifying Action Tags or cue points.

14. All documents concerning any source code used in the operation the Accused Platforms, including but not limited to a copy of the source code, documents sufficient to show who wrote the source code, when the source code was written, and any notes or other records made in the design, development, testing, and/or use of the source code.

15. All source code for the Accused Platforms relevant to each limitation of all asserted claims.

16. All documents concerning any patents owned, used, or licensed by Aylo concerning Cue-Point Methods or Systems.

17. All documents concerning or relating to each specification, manual, standard operating procedure, marketing materials, user guide, brochure, guidebook, and any other document that describes the operation of the Cue-Point Method(s) or System(s).

18. All documents concerning catalogs, code (including executable or compatible code), product specifications, user manuals, flowcharts, models, drawings, promotional literature, advertising, engineering design, engineering analysis, testing, and training materials for any of Aylo's systems, methods, or products within the scope of the Patent-in-Suit or identified as an Accused Platform.

19. All documents concerning promotional or advertising materials of (a) Action Tags and/or Cue Points on each of Your web sites; (b) Cue-Point Method(s) or System(s); and (c) the Accused Platforms.

April 17, 2024
Page 8

20. All documents concerning any source code used in the operation the Accused Platforms, including but not limited to a copy of the source code, documents sufficient to show who wrote the source code, when the source code was written, and any notes or other records made in the design, development, testing, and/or use of the source code.

21. All documents concerning any contemplated, desired, considered, proposed, or potential licensing of the Patent-in-Suit.

22. All opinions of counsel on, or concerning, the validity, invalidity, infringement, noninfringement, enforceability, non-enforceability, or license (either express of implied) as to the Patent-in-Suit.

23. All documents concerning any analysis, opinion, or inquiry regarding potential infringement of the inventions claimed in the Patent-in-Suit, including any documents concerning pre-litigation investigations performed by or on behalf of You, Your partners, Your licensors, Your customers, Your resellers, and/or Your affiliates, concerning potential infringement by any products, system, or methods made, used, sold and/or offered for sale by You, Your partners, Your licensors, Your customers, Your resellers, and/or Your affiliates.

24. All documents that refer or concern whether anyone has praised, criticized, or discussed the significance of any invention disclosed in any of the Patent-in-Suit, or any product that embodies or uses any such invention.

25. All documents concerning any systems, methods, or products that You contend are acceptable non-infringing alternatives to those covered by the claims asserted in WellcomeMat's disclosures pursuant to Local Patent Rule 3-1 served on March 11, 2024, for the uses for which Aylo has employed Cue-Point Method(s) or System(s).

26. All documents referring to or concerning any alleged non-infringing alternatives to the Patent-in-Suit for the manufacture, use, or sale of the Accused Platforms and/or the Cue-Point Method(s) or System(s).

27. All documents concerning any analyses or efforts by Aylo to design any systems, methods, or products around the Patent-in-Suit.

28. All documents that support or concern Your contentions that you have not infringed, induced the infringement of, or contributed to the infringement of the Patent-in-Suit.

April 17, 2024
Page 9

29. All documents that refer to or concern any prior art reference that Aylo believes anticipate or render obvious the Patent-in-Suit.

30. All documents that support or concern Your contentions, if any, that the Patent-in-Suit was not duly and legally issued.

31. All documents that refer to or concern any document that Aylo believes is relevant to the construction or interpretation of any claim of the Patent-in-Suit.

32. All documents concerning each, if any, of Your inventions, invention disclosures, innovations, patents, pending or abandoned patent applications, draft patent applications, invention disclosure reports, and/or trade secrets relating to Cue-Point Methods or Systems.

33. All documents concerning any license, royalty, technology transfer, or authorization-to-use agreements entered into by Aylo concerning in any way the Accused Platforms, whether or not formal agreement was ever reached.

34. All documents relating to any license that You contend is comparable.

35. All documents (such as purchase price allocations) that describe or discuss the value of patents, intellectual property rights, or technology that You acquired through the purchase, acquisition, or change of control of any third-party business entity, so long as the patent, intellectual property right, or technology relates to the Accused Platforms.

36. All manuals, architecture descriptions, training documents, training videos, and specifications for the Accused Platforms.

37. All documents concerning any past, present or contemplated future use, sale, and/or manufacturing of any Aylo system, method, or product within the scope of the Patent-in-Suit or the Cue-Point Method(s) or System(s).

38. All documents concerning any analyses, evaluations, memos, reports, and/or business review documents prepared by You, or of which You are aware, concerning WellcomeMat, its products, or the Patent-in-Suit, including but not limited to any documents concerning business case; implementation at Aylo; alternatives; strengths and weaknesses; pros and cons; actual or potential benefits; licensing; decisions not to license; valuation validity or invalidity; and/or infringement or non-infringement.

April 17, 2024
Page 10

39. All documents that refer to or concern strategic plans, business plans, business strategies, licensing plans, licensing proposals, prospectuses, surveys, marketing strategies, and/or market analyses for the benefits Aylo obtains from using the Accused Platforms.

40. All documents concerning Your policies or practices concerning patent clearances, right to use opinions, or other mechanisms to avoid Your infringement of the Patents-in-Suit.

41. All documents concerning Aylo's attempts to honor or not infringe the Patent-in-Suit.

42. All documents reflecting analytics and/or metrics concerning the actual, potential, perceived or expected benefits resulting from use and/or sale of Cue-Point Method(s) or System(s), such as but not limited to financial forecasts, SWOT analyses, payback analyses, project or budget requests, cost/benefit analyses, cost savings analyses, labor savings analyses, reduction in errors, enhanced efficiency, enhanced search results, enhanced client, customer, and/or or User satisfaction.

43. Documents sufficient to identify the number of unique Users in the State of Texas and Eastern District of Texas from October 13, 2017, to the present.

44. All documents relating to the commercial success (or lack of commercial success) of the Accused Platforms, including documents showing revenue, profits, quantities of videos streamed, market information, competitive analyses, press releases, financial reports, financial performance analyses, business plans, industry reports, and analyst reports, from October 13, 2017, to the present.

45. All documents concerning Aylo's research or analyses of the commercial success of WellcomeMat, the Patent-in-Suit, the Accused Platforms, and/or the Cue-Point Method(s) or System(s).

46. All documents concerning Aylo's research and/or analyses of its need (or lack of need) for Action Tags and/or cue points on each of its web sites.

47. Documents sufficient to identify the metrics and data associated with the Accused Platforms in the United States and worldwide from October 13, 2017, to the present, including the per month number of (a) users, (b) unique users, (c) videos, (d) videos with Action Tags or cue points, (e) video views, (f) views of videos with Action Tags or cue points, (g) average viewing time

April 17, 2024
Page 11

    per video, (h) average viewing time per video with Action Tags or cue points, (i) Action Tag or cue point impressions; and (j) Action Tag or cue point selections.

48. All documents concerning performance and/or performance testing of Action Tags and/or cue points on Aylo's web sites.

49. Documents sufficient to show all metrics or data that You track or maintain concerning the use of the Accused Platforms in the United States and worldwide.

50. All documents reflecting Your monthly sales, revenue, indirect revenue such as advertising and product placement, expenses, costs, and profit data relating to the Accused Platforms in the United States and worldwide from October 13, 2017, to the present, including all documents sufficient to explain any acronyms or terminology employed by Aylo's accounting system.

51. All documents concerning the accounting practices used by Aylo to account for the income Aylo obtains from using and/or selling the Accused Platforms.

52. All documents relating to any product that You developed by directly or indirectly relying on the Cue-Point Method(s) or System(s).

53. All documents relating to any method or system that automatically, or through the use of artificial intelligence or machine learning, adds, removes, and/or modifies Action Tags or cue points related to video content that is uploaded on any web site owned, controlled, and/or administered by You.

54. All documents concerning any source code used in the operation the any method or system that automatically, or through the use of artificial intelligence or machine learning, adds, removes, and/or modifies Action Tags or cue points related to video content that is uploaded on any web site owned, controlled, and/or administered by You.

55. All documents concerning any indemnification, offer to indemnify, or requests for indemnification, made by You to any other entity with respect to this Litigation or the Patent-in-Suit.

56. For each Accused Platform, all documents describing:

April 17, 2024
Page 12

     (a) system architecture, design, specifications, operation, features, engineering, testing or benefits;
     (b) hardware architecture, design, specifications, operation, features, engineering, testing or benefits; and
     (c) software architecture, design, specifications, operation, features, engineering, testing or benefits.

57. For each Accused Platform, all documents describing:
     (a) how the Accused Instrumentality is interfaced with a guide system controller, programmable logic controller, manufacturing execution system, or other computer system or controller;
     (b) how the Accused Instrumentality is programmed;
     (c) how data concerning the Accused Instrumentality is stored;
     (d) how data concerning the Accused Instrumentality is retrieved; and
     (e) the location(s) of the servers or data centers storing the data concerning the Accused Instrumentality.

58. Documents sufficient to show Aylo's corporate structure, including Aylo's parents, subsidiaries, affiliates, predecessors, and successors.

59. Documents sufficient to show Aylo's organizational structure with respect to the Accused Platforms.

60. All documents relating to Aylo's policies and practices concerning how Aylo distributes, shares, and/or transfers revenue and/or profits between and among Aylo's parents, subsidiaries, affiliates, predecessors, and successors.

61. All documents concerning current and former Aylo employees, board members, agents, and/or counsel identified in WellcomeMat's Initial Disclosures served on April 15, 2024, including but not limited to each individual's employment contracts, personal files, training records, and termination records.

62. All documents, including past and present organizational charts, that list or identify the Persons at Aylo who have or had responsibility for the following functions concerning the Accused Platforms:
     (a) manufacturing;
     (b) marketing or distribution;
     (c) advertising;
     (d) sales;
     (e) design;
     (f) engineering;

April 17, 2024
Page 13

      (g) testing;
      (h) specifications;
      (i) research and development;
      (j) patent activities;
      (k) importing and exporting;
      (l) licensing;
      (m) acquisition of technology from third party entities; and
      (n) product operation.

63. All prior testimony (including but not limited to deposition transcripts, trial transcripts, and affidavits) from any witness You identify as someone who may have relevant knowledge in any of Your discovery responses or in Your initial disclosures.

64. All documents referring or concerning statements made by Aylo including but not limited to communications between Aylo, any of its affiliates, and any of its prospective customers or business partners, referring to or concerning the actual or contemplated capabilities of the Accused Platforms.

65. All documents concerning an appraisal or valuation of any patent, license, royalty, technology transfer, or authorization-to-use agreement that relates to the Accused Platforms, including appraisals or valuations performed for tax purposes.

66. All documents reflecting all agreements in which You granted, or in which others granted You, any license or covenant rights under any patents that (a) concern any Cue-Point Method(s) or System(s) and/or (b) are relevant to the determination of any damages in This Litigation.

67. All documents reflecting each, if any, inbound, outbound, and/or cross licenses or covenant rights relating to the delivery of videos on any of Your websites.

68. Documents sufficient to identify all person(s) Aylo provided a litigation hold notice concerning this Litigation.

69. All documents concerning policies, procedures, or guidelines concerning the preservation and handling of evidence within Aylo.

70. All documents reflecting any policies and/or practices with respect to intellectual property clearance and/or respecting the intellectual property

April 17, 2024
Page 14

      rights of others, and all documents concerning, identifying, or discussing those policies and practices.

71. All documents concerning any complaints You have received or of which You are aware that Aylo ignores third-party intellectual property rights or fails to perform proper intellectual property clearance.

72. Documents sufficient to identify every lawsuit that has been filed against You since 2005 in which allegations of patent infringement were made against You.

73. All documents in which a court, judge, agency, and/or governmental agency has criticized Aylo's intellectual property policies or practices.

74. All documents in which an Aylo employee, officer, agent, affiliate, and/or third party has criticized Aylo's intellectual property policies or practices.

75. All documents concerning Your contentions, if any, on reasonable royalties pursuant to 35 U.S.C. § 284 for any infringement of the Patent-in-Suit.

76. All documents that support or concern Your contentions, if any, that WellcomeMat's damages derived from any of the Patents-in-Suit are barred or limited by reason of failure to mark the patented product pursuant to 35 U.S. Code § 287.

We are happy to discuss the production of these documents with you at any time.

Sincerely,

Andres Healy