**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| WELLCOMEMAT, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>AYLO HOLDINGS S.à r.l., AYLO FREESITES LTD, AYLO PREMIUM, LTD, 9219-1568 QUEBEC, INC., and JARROD BELTRAN,<br><br>*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:23-CV-00483-JRG-RSP |

**CLAIM CONSTRUCTION ORDER**

On April 30, 2025, the Court held a hearing to determine the proper construction of the disputed claim terms in U.S. Patent No. 8,307,286 (the '286 Patent). Having reviewed the arguments made by the parties at the hearing and in their claim construction briefing (Dkt. Nos. 236, 239, 243. 249, 251)[1], having considered the intrinsic evidence, and having made subsidiary factual findings about the extrinsic evidence, the Court hereby issues this Claim Construction Order. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

[1] Citations to the parties' filings are to the filing's number in the docket (Dkt. No.) and pin cites are to the page numbers assigned through ECF.

TABLE OF CONTENTS


I. BACKGROUND ..... 3

II. APPLICABLE LAW ..... 4

III. LEVEL OF ORDINARY SKILL IN THE ART ..... 8

IV. CONSTRUCTION OF AGREED TERMS ..... 9

V. CONSTRUCTION OF DISPUTED TERMS ..... 12

A. "a set of video information" / "a set of cue point information" ..... 12

B. "cue point editing command" ..... 16

C. "modifying" ..... 20

D. "interpreting at least a portion of the set of cue point information" ..... 25

E. "provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal" ..... 27

F. "public network" ..... 33

VI. CONCLUSION ..... 34

## I. BACKGROUND

Plaintiff WellcomeMat LLC alleges that Defendants Aylo Holdings S.à. r.l., Aylo Freesites Ltd, Aylo Premium Ltd, and 9219-1568 Quebec Inc. infringe the ’286 Patent. Shortly before the start of the April 30, 2025 hearing, the Court provided the parties with preliminary constructions with the aim of focusing the parties’ arguments and facilitating discussion.

The ’286 Patent, titled “Methods and Systems for Online Video-Based Property Commerce,” was filed on May 4, 2007, and issued on November 6, 2012. The ’286 Patent “relates generally to online video; and more particularly to methods and systems for handling online video for property commerce over the Internet.” ’286 Patent at 1:20–22.

The Abstract of the ’286 Patent states:

> Video data may be extremely useful in online property commerce. However, the current methods of handling this video data fail to provide users of the data with effective and convenient ways of conveying and consolidating footage of multiple viewpoints and other property features. Among other things, embodiments of the invention address these failures by providing methods and systems for better handling of video data for property marketing, reporting, and analysis.

Claim 13 of the ’286 Patent is an illustrative claim and recites the following elements (disputed terms in italic):

> 13. A method for handling video cue points, the method comprising:
> providing a computer system having at least one computer-readable medium comprising a video editing environment, and being disposed at a server side of a *public network*;
> receiving a *set of video information* at the video editing environment using the computer system;
> receiving a *set of cue point information* at the video editing environment using the computer system;
> receiving a *cue point editing command* over the network from a remote client terminal disposed at a client side of the *public network* using the computer system;
> *modifying a portion of the cue point information* at the server side of the *public network* according to the *cue point editing*

> *command* received over the *public network* from the client terminal;
>
> receiving a cue point selection over the network from the remote client terminal identifying one of the cue points corresponding to a portion of the video information of one of the video files; and
>
> streaming the portion of the video information to the client terminal over the *public network* in response to receiving the cue point selection.

## II. APPLICABLE LAW

### A. Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). To determine the meaning of the claims, courts start by considering the intrinsic evidence. *Id.* at 1313; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). The intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. The general rule—subject to certain specific exceptions discussed *infra*—is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (quotation marks omitted) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") *cert. granted, judgment vacated,* 135 S. Ct. 1846 (2015).

"The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).

"[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015). First, a term's context in the asserted claim can be instructive. *Phillips*, 415 F.3d at 1314. Other asserted or unasserted claims can also aid in determining the claim's meaning, because claim terms are typically used consistently throughout the patent. *Id.* Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*.

The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally

be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

The prosecution history is another tool to supply the proper context for claim construction because, like the specification, the prosecution history provides evidence of how the U.S. Patent and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317. However, "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history may be "unhelpful as an interpretive resource").

Although extrinsic evidence can also be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are not helpful to a court. *Id*. Extrinsic evidence is "less reliable

than the patent and its prosecution history in determining how to read claim terms." *Id*. The Supreme Court has explained the role of extrinsic evidence in claim construction:

> In some cases, however, the district court will need to look beyond the patent's intrinsic evidence and to consult extrinsic evidence in order to understand, for example, the background science or the meaning of a term in the relevant art during the relevant time period. *See, e.g., Seymour v. Osborne*, 11 Wall. 516, 546 (1871) (a patent may be "so interspersed with technical terms and terms of art that the testimony of scientific witnesses is indispensable to a correct understanding of its meaning"). In cases where those subsidiary facts are in dispute, courts will need to make subsidiary factual findings about that extrinsic evidence. These are the "evidentiary underpinnings" of claim construction that we discussed in *Markman*, and this subsidiary factfinding must be reviewed for clear error on appeal.

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331–32 (2015).

### B. Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."[2] *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and disavowal."). The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *Id.* (quoting *Thorner*, 669

[2] Some cases have characterized other principles of claim construction as "exceptions" to the general rule, such as the statutory requirement that a means-plus-function term is construed to cover the corresponding structure disclosed in the specification. *See, e.g., CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1367 (Fed. Cir. 2002).

F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249. The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision." *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender. *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope."). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

## III. LEVEL OF ORDINARY SKILL IN THE ART

It is well established that patents are interpreted from the perspective of one of ordinary skill in the art ("POSITA"). *See Phillips*, 415 F.3d at 1313 ("[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The Federal Circuit has advised that the "[f]actors that may be considered in determining the level of skill in the art include: (1) the educational level of the inventors; (2) the type of problems encountered in the art; (3) prior art solutions to those problems; (4) the rapidity with which innovations are made; (5) sophistication of the technology; and (6) education level of active workers in the field." *Env'tl Designs, Ltd. v. Union Oil Co. of California*, 713 F.2d 693, 696 (Fed. Cir. 1983). "These factors are not exhaustive but are merely a guide to determining the level of ordinary skill in the art." *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007).

Plaintiff's expert, Dr. Scott Schaefer, contends a POSITA would have "a bachelor's degree in electrical engineering, computer engineering, computer science, or a related field plus approximately two years of work experience with technologies related to video editing/annotation." (Dkt. No. 236-3 at ¶ 17). Dr. Schaefer further contends that "[a]n individual with less technical education but more experience, or vice versa, could also qualify as a person of ordinary skill in the art." *Id.* Defendants do not provide the qualifications of a POSITA in their briefing.

Having considered the proposal, and the factors that may be considered in determining the level of skill in the art, the Court agrees with Plaintiff's proposed level of skill in the art for the purpose of claim construction. Specifically, a POSITA would have a bachelor's degree in electrical engineering, computer engineering, computer science, or a related field plus approximately two years of work experience with technologies related to video editing/annotation. The Court further agrees that an individual with less technical education but more experience, or vice versa, could also qualify as a person of ordinary skill in the art.

## IV. CONSTRUCTION OF AGREED TERMS

Shortly before the claim construction hearing, the provided an amended joint claim construction chart, and agreed to the construction of the following claim terms:

| Claim Term/Phrase | Agreed Construction |
|---|---|
| "the network"<br>(Claims 13, 15, 18, 21) | "the public network" |
| "the video player"<br>(Claim 20) | "the video playback environment" |
| "video editing environment" / "video editing module"<br>(Claims 13-15, 19, 21, 23-24, 26-28) | "software, including a program, application, or webpage, for video editing" |
| "receiving … at the video editing environment" | Plain and ordinary meaning. |

| | |
|---|---|
| (Claim 13) | |
| "disposed at a server side of a public network"<br>(Claim 13) | Plain and ordinary meaning. |
| "cue point information"<br>(Claims 13, 14, 17, 21, 22) | "cue point information associated with video data" |
| "remote client terminal"<br>(Claims 13, 18-23, 26-28) | Plain and ordinary meaning. |
| "disposed at a client side of the public network"<br>(Claim 13) | Plain and ordinary meaning. |
| "identifying one of the cue points"<br>(Claim 13) | Plain and ordinary meaning. |
| "corresponding to a portion of the video information of one of the video files"<br>(Claim 13) | Plain and ordinary meaning. |
| "generating, automatically by using the computer system"<br>(Claim 17) | "using the computer system to automatically generate, based on audio or video recognition, patterns of user activity, or other inputs or stimuli" |
| "access authority of the remote client terminal"<br>(Claims 18, 19) | Plain and ordinary meaning. |
| "the server video data"<br>(Claim 20) | Plain and ordinary meaning. |
| "configured to run, over the public network" / "configured to run the video editing module over the public network"<br>(Claims 21, 22, 26-28) | Plain and ordinary meaning. |
| "corresponding to a portion of video information of a video file"<br>(Claim 21) | Plain and ordinary meaning. |
| "a cue point"<br>(Claim 21) | Plain and ordinary meaning. |

| | |
|---|---|
| "without authentication of the remote client terminal by the client authentication module as an editor terminal"<br>(Claim 22) | "without a need for authentication of the remote client terminal by the client authentication module as an editor terminal" |
| "the video file"<br>(Claims 22, 24) | Plain and ordinary meaning. |
| "standard internet browser"<br>(Claim 26) | Plain and ordinary meaning. |
| "provide the edit interactivity without a dedicated client-side application running on the remote client terminal"<br>(Claim 27) | "provide the edit interactivity other than through an application running on the client's terminal reserved for providing such edit interactivity" |
| "the server-side video information"<br>(Claim 28) | Plain and ordinary meaning. |
| "one of the remote client terminals" / "the remote client terminal" / "the client terminal"<br>(Claim 21) | The same "remote client terminal" is being referred to in each of: "receive a cue point selection over the network from one of the remote client terminals," "stream the portion of the video information to the remote client terminal," "provide edit interactivity with cue point information only when the remote client terminal is authenticated," "receiving a cue point editing command over the public network from one of the remote client terminals," and "according to the cue point editing command received over the public network from the client terminal." |
| "a remote client terminal" / "the client terminal" / "the remote client terminal"<br>(Claim 13) | The same "remote client terminal" is being referred to in each of: "receiving a cue point editing command over the network from a remote client terminal," "according to the cue point editing command received over the public network from the client terminal," "receiving a cue point selection over the network from the remote client terminal," and "streaming the portion of the video information to the client terminal." |

Dkt. No. 252-1 at 1-6 (P.R. 4-5(d) First Amended Joint Claim Construction Chart). In view of the

parties' agreement on the proper construction of the identified terms, the Court hereby **ADOPTS** the parties' agreed constructions.

## V. CONSTRUCTION OF DISPUTED TERMS

The parties dispute the meaning and scope of eight terms or phrases in the Asserted Patents. Each dispute is addressed below.

### A. "a set of video information" / "a set of cue point information"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "a set of video information" | Plain and ordinary meaning. Alternatively, "one or more bits of video information" | Plain meaning, i.e., "multiple video data from a plurality of video files" |
| "a set of cue point information" | Plain and ordinary meaning. Alternatively, "one or more bits of cue point information" | Plain meaning, i.e., "multiple cue point data corresponding to cue points" |

#### 1. Analysis

The term "a set of video information" appears in Asserted Claim 13 of the '286 Patent. The term "a set of cue point information" appears in Asserted Claims 13, 14, and 17 of the '286 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The parties dispute whether "a set" means "one or more," as Plaintiff contends, or if "a set" requires "multiple," as Defendants contend.[3] The parties also dispute whether an additional limitation should be included in the construction to correct an alleged antecedent basis problem in Claim 13.

Defendants' construction replaces "video information" with "video data," and replaces "cue point information" with "cue point data." The Court finds these changes are unwarranted and unnecessary. The parties agree that "video information" is also referred to as "video data." (*See,*

[3] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. No. 236 at 7-9); Defendants' Responsive Claim Construction Brief (Dkt. No. 239 at 9-13); and Plaintiff's Reply Claim Construction Brief (Dkt. No. 243 at 6-8, 11).

*e.g.*,. Dkt. No. 236 at 9). Likewise, the parties agree that "cue point information" should be construed to mean "cue point information associated with video data." (Dkt. No. 252-1 at 1). Thus, there is not a claim scope dispute as it relates to the terms "video information" and "cue point information." Indeed, Defendants state that they are "not arguing that 'video information' is the same as 'video files' or that 'cue point information' is the same as 'cue points.'" (Dkt. No. 239 at 12). Accordingly, the Court finds that there is no reason to replace "video information" with "video data," and replace "cue point information" with "cue point data," as Defendants propose. *See U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

The parties dispute whether "a set" means "one or more," as Plaintiff contends, or if it requires "multiple," as Defendants contend. Plaintiff argues that the intrinsic and extrinsic evidence demonstrate that "set" means "one or more." (Dkt. No. 236 at 8). To support this contention, Plaintiff provides only one cite to the intrinsic evidence. Specifically, Plaintiff points to the statement that "the network 430 may comprise a set of data transmission channels, like a cable." *Id.* at 8 (citing '286 Patent at 24:45–47). According to Plaintiff, this "explicitly teaches that a set can include only one object." *Id.*

Contrary to Plaintiff's contention, the word "set" is used in the specification to mean "two or more." For example, the specification states "the identifier being a unique file name or other identifier of *a video file or set of video files*." '286 Patent, at 7:20–21 (emphasis added). This indicates that a "set" of video files is more than just a single video file. Similarly, the specification states that "[t]he network 130 may be any public or private, wired or wireless *network or set of*

*networks.*" '286 Patent at 10:6–7 (emphasis added); *see also, id.* at 44:3–4 ("The set of cue points 1804 represent hierarchical cue points").

This indicates that a "set" of networks, or "set" of cue points is more than just a single network or single cue point. Moreover, Defendants persuasively argue that Plaintiff's only example is consistent with this understanding, because "a cable" can contain multiple "data transmission channels" (*e.g.*, a single cable can be a link with multiple connections, carrying multiple data transmission channels). (Dkt. No. 239 at 12).

The Court further finds that the extrinsic evidence cited by Plaintiff is not consistent with the intrinsic evidence. *Phillips*, 415 F.3d at 1321 ("[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification."). Defendants correctly argue that there is no evidence that the patentees intended to define "set" using Set Theory, or even intended to elevate extrinsic evidence over the clear intrinsic record. (Dkt. No. 239 at 13).

Moreover, Dr. Schaefer ignores the definitions he cites for the word "set," which state that "set" means "two or more." Specifically, the Merriam-Webster Online Dictionary defines a "set" as a "number of things"; the Cambridge Online Dictionary defines a "set" as a "group of similar things"; and the Microsoft Computer Dictionary defines a "set" as "a group of related characters". (Dkt. No. 236-3 at ¶25). Accordingly, the Court construes the term "a set" to mean "two or more."

Regarding the second issue, the Court rejects Defendants' attempt to read an additional limitation into Claim 13. Defendants correctly summarize the prosecution history, and note that during prosecution the patentees took allowable material from Claim 6 (which depended from Claim 1) and incorporated it into independent Claims 1, 13, and 41. Specifically, the patentees

stated that "Applicants thank Examiner Leggett for identifying allowable subject matter in claims 6 and 7. … Independent claims 1, 13, and 41 are amended to incorporate the allowable subject matter of claim 6, and claim 6 is canceled." (Dkt. No. 239-4 at 10). Defendants argue that the patentees mistakenly failed to incorporate the antecedent claim language from Claim 1 into Claim 13, which they contend was necessary to support this allowable material. (Dkt. No. 239 at 9).

Specifically, Defendants argue that while both Claims 1 and 13 recite "*the* video files" and "*the* cue points" (as was recited in claim 6), only Claim 1 includes the antecedent claim language "a set of video information *from a plurality of video files*" and "a set of cue point information *corresponding to cue points*." *Id.* at 9. According to Defendants, their construction corrects this prosecution error by incorporating the necessary language from Claim 1 into Claim 13. *Id.*

Plaintiff responds that Defendants cite no authority for their request that the Court redraft this term to purportedly fix an antecedent basis argument in a different claim term (*i.e.*, Term 12 - "corresponding to a portion of the video information of one of the video files"). Plaintiff argues that a POSITA would readily understand Term 12 regardless of its imperfect drafting. (Dkt. No. 243 at 8). The Court agrees that the claim language is less than ideal. However, Claim 41 was also amended to incorporate the allowable subject matter, and provides an example of how a POSITA would understand Claim 13 without the additional limitations proposed by Defendants. Indeed, Plaintiff correctly argues that Defendants have withdrawn their antecedent basis argument as to Term 12. (Dkt. No. 244 at 8) (The Parties agree that "corresponding to a portion of the video information of one of the video files" should be given its plain and ordinary meaning). Accordingly, Defendants have not provided a persuasive reason to redraft Claim 13 as they propose.

**2. Court's Construction**

For the reasons set forth above, the terms **"a set of video information"** and **"a set of cue point information"** are given their **plain and ordinary meaning**. The Court construes the term **"set"** to mean **"two or more."**

**B. "cue point editing command"**

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
| --- | --- | --- |
| "cue point editing command" | Plain and ordinary meaning. | Plain meaning, i.e., "instruction containing information for editing a cue point" |

**1. Analysis**

The term "cue point editing command" appears in Asserted Claims 13, 14, and 21 of the '286 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The parties agree that the term "cue point," the first part of the term, should be given its plain and ordinary meaning.[4] Furthermore, the specification discloses types of "cue point information." '286 Patent at 19:36–53.

Defendants open the supplemental briefing by arguing that the "words 'cue point editing command' are clear and understandable." (Dkt. No. 249 at 2). This is a strong indication that the term does not need to be construed. However, Defendants argue that their construction is necessary because Plaintiff contends that a cue point editing command can be a "command utilized to upload a video and/or place a video in a queue to be submitted to an artificial intelligence system." *Id.* Defendants also argue that "[t]his directly contradicts the plain language of the claims as well as the purpose the cue point editing command has within the claims." *Id.*

[4] The parties' arguments for this disputed term can be found in Defendants' Supplemental Claim Construction Brief (Dkt. No. 249 at 2-3); and Plaintiff's Response Supplemental Claim Construction Brief (Dkt. No. 251 at 2-3).

Defendants further contend that the words "cue point editing command" indicate two requirements. *Id.* The first is that it must be a "command" (*i.e.*, an instruction to the server that the server must act upon), and second that the instruction to the server must be for editing a cue point. *Id.* at 2-3 (citing '286 Patent at 7:33–38, 42:45–48). Defendants also contend that after receiving the cue point editing command, the server "modif[ies] a portion of the cue point information" "according to the cue point editing command." (Dkt. No. 249 at 3) (citing '286 Patent at 15:40–49, 16:5–6, 16:42–45, 21:13–19). Defendants argue that "[a] command to upload a video or place a video in a queue is plainly not a cue point editing command because: (1) it is not a command for editing a cue point; and (2) it does not contain any information for the server to use for modifying a cue point." (Dkt. No. 249 at 3). Defendants contend that uploading or queueing a video and letting the server decide for itself whether and how to edit cue points is not what Plaintiff claimed. *Id.*

Plaintiff argues that Defendants already agreed that the term should be construed to have its plain and ordinary meaning. (Dkt. No. 251 at 2). Plaintiff further argues that construing the term to have its plain and ordinary meaning is particularly appropriate here as the claims expressly recite what the term requires. *Id.* Plaintiff contends that the specification expressly refutes Defendants' argument that a command that results in the "[u]ploading or queueing [of] a video" to a server that "decide[s] for itself whether and how to edit cue points" does not satisfy the term. *Id.* at 3.

According to Plaintiff, the specification teaches that "[i]f the cue point edit mode has been entered 322-2, the method 300 may proceed by receiving cue point data 324," which it explains "may be received," e.g., "by contextual inference (e.g. audio or image recognition from the video file, time or date information from the computer's Basic Input Output System (BIOS), etc.)." *Id.*

(citing '286 Patent at 15:40–59). Plaintiff argues that the specification teaches that "[a]udio" or "[v]ideo recognition" allows the system "e.g. to automatically create a cue point." (Dkt. No. 251 at 3).

Plaintiff also contends that the specification discloses examples where a command to upload a file results in the editing of cue point information and thus operates as a cue point editing command. *Id.* (citing '286 Patent at 16:59–17:35, 17:53–55, 8:1–14). Plaintiff further contends that "the term 'cue point editing command' requires only a command that <u>results</u> in the editing of cue point information in the manner the relevant claim requires." (Dkt. No. 251 at 3) (emphasis in original).

The Court finds that the term does not require construction. Indeed, Defendants argue that the "words 'cue point editing command' are clear and understandable." (Dkt. No. 249 at 2). Moreover, the claims expressly recite what the term requires. For example, Claim 13 recites "receiving *a cue point editing command* over the network from a remote client terminal disposed at a client side of the public network using the computer system." Claim 13 further recites "modifying a portion of the cue point information at the server side of the public network according to *the cue point editing command* received over the public network from the client terminal."

Similarly, Claim 21 recites "receiving *a cue point editing command* over the public network from one of the remote client terminals," and "modifying a portion of the cue point information at the video editing module in response to and according to *the cue point editing command* received over the public network from the client terminal." Dependent Claim 14 requires "perform[ing] at least one of creating, modifying, deleting, or interpreting at least a portion of the set of cue point information according to *the cue point editing command*." Dependent Claim 25 further requires "creating the cue point, deleting the cue point," etc. Accordingly, the Court finds

that in light of the claim language, the term "cue point editing command" should be given its plan and ordinary meaning.

To be sure, the parties agree that the term "cue point" should be given its plain and ordinary meaning. Thus, the only term proposed for construction is "command," which Defendants contend should be construed to mean "instruction containing information." Defendants' construction does not provide any clarity for the term "command." It is redundant of the claim language and would not be helpful to a jury. In summary, Defendants fail to provide a persuasive reason to redraft the term as it proposes. *See U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

That said, the Court is not adopting or deciding the infringement issue presented by the parties. In other words, the Court does not agree or disagree that "cue point editing command" requires only a command that results in the editing of cue point information, as Plaintiff contends. That is inquiry is left to the trier of fact as it relates to the issue of infringement and noninfringement. *SmithKline Beecham Corp. v. Apotex Corp*., 403 F.3d 1331, 1340 (Fed. Cir. 2005) (holding that court "must construe claims without considering the implications of covering a particular product or process.").

**2. Court's Construction**

For the reasons set forth above, the term **"cue point editing command"** is given its **plain and ordinary meaning**.

### C. "modifying"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "modifying a portion of the cue-point information" / "modifying" | "modifying a portion of the cue-point information" as recited in Claims 13, 21, and 25 should be construed to include "creating the cue point, deleting the cue point, temporally moving the cue point, editing a label associated with the cue point, or editing an association between multiple cue points including the cue point" as recited in Claim 25, and "modifying" as recited in Claim 14 should be construed to mean "modifying, including creating, deleting, moving, or editing" | Plain meaning, *i.e.*, "changing, without creating or deleting" |
| "wherein modifying a portion of the cue-point information affects the corresponding cue point by at least one of: creating the cue point, deleting the cue point, temporally moving the cue point, editing a label associated with the cue point, or editing an association between multiple cue points including the cue point" | "provide edit interactivity with cue point information only when the at least one of the remote client terminals is authenticated by the client authentication module as an editor terminal" | Plain meaning, i.e., the word "modifying" means "changing, without creating or deleting"<br><br>Indefinite under WellcomeMat's construction of claim term #10.<br><br>Aylo has modified its construction to reflect that claim term #23 is only indefinite if WellcomeMat's construction for claim term #10 is adopted. |

#### 1. Analysis

The term "modifying" appears in Asserted Claims 13, 14, 21, and 25 of the '286 Patent. The Court finds that the term is used consistently in the claims and is intended to have the same general meaning in each claim. The phrase "wherein modifying a portion of the cue-point information affects the corresponding cue point by at least one of: creating the cue point, deleting the cue point, temporally moving the cue point, editing a label associated with the cue point, or

editing an association between multiple cue points including the cue point" appears in Asserted Claim 25. The parties dispute whether the patentees provided an express definition of "modifying" that includes "creating and deleting," as Plaintiff contends.[5] Defendants argue that Plaintiff is taking this position so that it can continue asserting its patent against Defendants knowing Defendants disabled the ability to modify action tags for all videos across all accused websites.

Plaintiff argues that dependent Claim 25 expressly defines the phrase by stating "wherein modifying a portion of the cue-point information affects the corresponding cue point by at least one of [1] creating the cue point, [2] deleting the cue point, [3] temporally moving the cue point, [4] editing a label associated with the cue point, or [5] editing an association between multiple cue points including the cue point." (Dkt. No. 236 at 17). According to Plaintiff, this express definition is dispositive. *Id.*

Defendants argue that Plaintiff cannot point to a single statement in the body of the specification or prosecution history that sets forth an express definition of "modify" or that shows any intent to redefine "modify" to include the acts of creating or deleting. (Dkt. No. 239 at 19-20). Defendants also argue that the specification makes clear that "modify" is something different than "create" or "delete." *Id.* (citing '286 Patent at 19:28–30, 21:6–13, 21:13–16, 2:63–65; 3:48–51; 4:60–64; 5:4–7). Defendants contend that the repeated statements in the specification are fatal to Plaintiff's lexicography argument. (Dkt. No. 239 at 20).

Defendants also argue that Plaintiff cannot contend that Claim 25 sets forth an express definition or evinces any intent to redefine the term "modify." *Id.* Defendants contend that Claim

---

[5] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. No. 236 at 16-17, 30-32); Defendants' Responsive Claim Construction Brief (Dkt. No. 239 at 18-24); and Plaintiff's Reply Claim Construction Brief (Dkt. No. 243 at 11-16).

25 was not an originally filed claim; but was added by amendment mid-prosecution. *Id.* at 20-21 (citing Dkt. No. 239-6 at 9). Defendants further argue that if Plaintiff's construction is correct, then Claims 21 and 25 would have the exact same scope, and the entirety of Claim 25 would be superfluous, which they contend cannot be correct. (Dkt. No. 239 at 21).

The challenge for the Court is that the language in the specification is not as clear as dependent Claim 25. Defendants correctly argue that the specification provides a serial list of the terms "modifying," "adding," or "deleting." For example, the specification states that "[c]ue point editing types may include, for example, *adding, modifying, or deleting cue point information*." '286 Patent at 19:28–30 (emphasis added); *see also*, *id.* at 2:62–65 ("a cue point handler configured to execute *at least one of creating, modifying, deleting, or interpreting at least a portion of the set* of cue point information.") (emphasis added); *id.* at 3:48–51 ("a cue point editing mode configured to perform *at least one of creating, modifying, deleting, or interpreting at least a portion of the set* of cue point information") (emphasis added); *id.* at 4:60–64 ("a cue point editing mode configured to perform *at least one of creating, modifying, deleting, or interpreting at least a portion of the set* of cue point information.") (emphasis added). Likewise, dependent Claim 14 recites "providing a cue point editing mode as part of the video editing environment configured to perform *at least one of creating, modifying, deleting, or interpreting at least a portion of the set* of cue point information." However, without more, providing a serial list of "modifying," "adding," and "deleting" does not mean they have to be mutually exclusive of one another.

On the contrary, dependent Claim 25 states that "modifying a portion of the cue-point information" includes "creating" or "deleting." Specifically, Claim 25 explicitly recites that the phrase "modifying a portion of the cue-point information" includes "at least one of [1] creating the cue point, [2] deleting the cue point, [3] temporally moving the cue point, [4] editing a label

associated with the cue point, or [5] editing an association between multiple cue points including the cue point." '286 Patent at 56:60–65.

Given the intrinsic evidence, "modifying a portion of the cue-point information" should not be construed to exclude what Claim 25 explicitly recites. Indeed, "[b]y definition, an independent claim is broader than a claim that depends from it, so if a dependent claim reads on a particular embodiment of the claimed invention, the corresponding independent claim must cover that embodiment as well." *Littelfuse, Inc. v. Mersen USA EP Corp.*, 29 F.4th 1376, 1380 (Fed. Cir. 2022). As such, a "construction [of the independent claim] which excludes these explicitly claimed embodiments [in the dependent claims] is inconsistent with the plain language of the claims." *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1346 (Fed. Cir. 2020).

To be sure, the Federal Circuit in *Littelfuse,* held that the district court erred stating that the "recitation … in [dependent] claims 8, 9, 19, and 20 is persuasive evidence that [independent] claims 1 and 10 also cover" the same claim scope. *Littelfuse*, 29 F.4th at 1380. The court cited *Wright Med. Tech.*, which stated that "[w]e must not interpret an independent claim in a way that is inconsistent with a claim which depends from it." *Id.* at 1380 (citing *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997)).

As for the specification's disclosures, the court noted in *Littelfuse* that the purported limitation was in the context of "the detailed description" (*i.e.*, an embodiment) rather than the invention as a whole. *Id*. at 1381. Thus, the court reiterated that, "as we have cautioned, courts ordinarily should not limit 'the claimed invention to preferred embodiments or specific examples in the specification.'" *Id*. (citing *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1328 (Fed. Cir. 2002)). Accordingly, the Court rejects Defendants' construction, because it "conflicts with the language of the claims," which explicitly states that "modifying a portion of the cue-point

information," may include both "creating" and "deleting" cue points. *Visto Corp. v. Research in Motion Ltd.*, 623 F. Supp. 2d 756, 778 (E.D. Tex. 2008).

Claim 14 also does not support Defendants' position. Unlike Claim 25, Claim 14 does not include the phrase "modifying a portion of the cue point information," which is the disputed claim language in Claims 13, 21, and 25. Instead, Claim 14 recites that the "cue point editing command" that performs the recited "modifying" in Claim 13, results in the "creating, modifying, deleting, or interpreting at least a portion of the set of cue point information." This further supports Plaintiff's argument.

Likewise, Plaintiff persuasively argues that a POSITA would understand the recitation of "modifying a portion of the cue-point information" in Claim 21 (and Claim 13) to be broader than what Claim 25 recites. (Dkt. No. 236-4 at ¶ 174). For example, the specification teaches that "[m]odifying cue point information may include such cases as changing various attributes of an existing cue point (e.g. the cue points name or time position) … or any other useful type of modification to existing cue point information." '286 Patent at 21:13–19. Thus, an example of "modifying a portion of the cue-point information" that would satisfy Claim 21, but may not satisfy Claim 25, could include adding, deleting, or changing information in the "comment text field 636" of the "cue point parameters area 630." *Id.* at 27:32–40.

Finally, Defendants argue that no claim allows for creating a cue point out of thin air. (Dkt. No. 239 at 22). Defendants contend that the full language of Claims 13, 21, and 25 is "modifying a portion of **<u>the</u>** cue point information." *Id.* (emphasis in original). According to Defendants, these claims require modifying cue point information that already exists. *Id.* Defendants argue that "modifying" is an operation that occurs solely on existing cue point information (or cue points). *Id.* at 22-23) (citing '286 Patent at 21:13–19). Defendants contend that the same cue point cannot

be created twice (or deleted twice), once by Claim 21 and again by Claim 25. (Dkt. No. 239 at 23).

Contrary to Defendants' contention, nothing in the claims requires creating a cue point twice or deleting a cue point twice. Indeed, as discussed above, the intrinsic evidence indicates that "modifying a portion of the cue-point information," may include either "creating" or "deleting" the cue point. Thus, the Court rejects Defendants' argument that "modifying" cannot include creating or deleting. Finally, in reaching its conclusion, the Court has considered the extrinsic evidence submitted by the parties, and given it its proper weight in light of the intrinsic evidence.

### 2. Court's Construction

For the reasons set forth above, the term **"modifying"** is given its **plain and ordinary meaning**. The phrase **"modifying a portion of the cue-point information,"** and the phrase **"wherein modifying a portion of the cue-point information affects the corresponding cue point by at least one of: creating the cue point, deleting the cue point, temporally moving the cue point, editing a label associated with the cue point, or editing an association between multiple cue points including the cue point"** are given their **plain and ordinary meaning**

## D. "interpreting at least a portion of the set of cue point information"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "interpreting at least a portion of the set of cue point information" | Plain and ordinary meaning. Alternatively, "determining or identifying at least a portion of the set of cue point information." | Plain and ordinary meaning. |

### 1. Analysis

The phrase "interpreting at least a portion of the set of cue point information" appears in Asserted Claim 14 of the '286 Patent. The parties agree that the term should be given its plain and

ordinary meaning. (Dkt. No. 239 at 26).[6] However, Defendants do not agree with Plaintiff's alternative construction, which replaces the word "interpreting" with "determining or identifying." *Id.*

Plaintiff argues that the specification teaches how the system may "detect" or "interpret" various cue point information. (Dkt. No. 236 at 21) (citing '286 Patent at 8:1–14). Plaintiff further argues that the specification discloses how one embodiment of the cue point edit mode permits cue point information to be detected or interpreted. (Dkt. No. 236 at 21) (citing '286 Patent at 15:40–49). Plaintiff also contends that two additional passages in the patent disclose how interpreting can be used to determine certain cue point information. (Dkt. No. 236 at 21-23) (citing '286 Patent at 19:60–20:4, 21:46–61).

The Court finds that Plaintiff has not provided a persuasive reason to redraft the term "interpreting" to mean "determining or identifying." The Court agrees with Defendants that neither of the words "determining" nor "identifying" is a synonym for the word "interpreting." Moreover, the claim language recites interpreting "cue point information." The portions of the specification cited by Plaintiff do not disclose interpreting "cue point information." Instead, the specification discloses interpreting "changes in audio level" or "changes in video" using audio recognition and video recognition. '286 Patent at 8:1–14. The specification states that this information may be used to "automatically create a cue point." Creating a cue point is not the same as "interpreting cue point information." Indeed, Claim 14 recites "creating … at least a portion of the set of cue point information." Therefore, this is not an example of interpreting cue point information.

Likewise, the other portions of the specification cited by Plaintiff disclose receiving cue

[6] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. No. 236 at 20-22); Defendants' Responsive Claim Construction Brief (Dkt. No. 239 at 26-27); and Plaintiff's Reply Claim Construction Brief (Dkt. No. 243 at 16).

point data or inferring information. Plaintiff did not show that "receiving" and "inferring" is "interpreting." These are different words and concepts, and Plaintiff fails to persuasively explain why "inferring" should mean "determining or identifying." Moreover, the specification indicates that interpreting is not the same as detecting, because it distinguishes between the two by reciting "detect and/or interpret." Most importantly, none of the portions of the specification that Plaintiff cites use the words "determining or identifying," let alone in the context of interpreting.

Plaintiff argues that a dispute exists because Defendants admit they intend to argue that disclosures like the ones Plaintiff cites do not fall within the scope of the term's plain and ordinary meaning. The issue before the Court is not whether the parties have a dispute, but whether there is a dispute about the scope of the claims that needs to be resolved by the Court. Plaintiff fails to present an actual dispute on the meaning of the term "interpreting." The Court is not at liberty to redraft the claims simply because a party prefers a different term. *See U.S. Surgical Corp. v. Ethicon, Inc.,* 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement. It is not an obligatory exercise in redundancy.").

### 2. Court's Construction

For the reasons set forth above, the phrase **"interpreting at least a portion of the set of cue point information"** is given its **plain and ordinary meaning.**

## E. "provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal" | Plain and ordinary meaning. Alternatively, "provide edit interactivity with cue point information only when the at least one of the remote client terminals is authenticated by the client authentication module as an editor terminal" | Plain and ordinary meaning. |

**1. Analysis**

The phrase "provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal" appears in Asserted Claim 21 of the '286 Patent. Plaintiff contends that Defendants intend to argue that the claim requires that all remote client terminals must be authenticated.[7] Defendants respond that Plaintiff's construction would allow a remote client terminal to gain access to edit interactivity when (or after) some other remote client terminal has been authenticated as an editor terminal. (Dkt. No. 239 at 28). To this end, Plaintiff argues that "the claim requires only that the module be configured to authenticate at least one of the plurality of remote client terminals that are capable of accessing the application server." (Dkt. No. 236 at 27).

Claim 21 of the '286 Patent follows (disputed term in italic):

> 21. A system for handling video cue points, the system comprising:
> an application server accessible by a plurality of remote client terminals over a public network comprising at least one processor and configured to run, over the public network:
> a client authentication module configured to authenticate remote client terminals as editor terminals; and
> a video editing module configured to:
> receive a cue point selection over the network from one of the remote client terminals identifying one of the video cue points corresponding to a portion of video information of a video file;

[7] The parties' arguments for this disputed term can be found in Plaintiff's Opening Claim Construction Brief (Dkt. No. 236 at 26-28); Defendants' Responsive Claim Construction Brief (Dkt. No. 239 at 28-31); and Plaintiff's Reply Claim Construction Brief (Dkt. No. 243 at 16-18).

> stream the portion of the video information to the remote client terminal over the public network in response to receiving the cue point selection; and
> *provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal by:*
> receiving a cue point editing command over the public network from one of the remote client terminals; and
> modifying a portion of the cue point information at the video editing module in response to and according to the cue point editing command received over the public network from the client terminal,
> the cue point information corresponding to a cue point indicating a location within at least one video file.

As indicated, Claim 21 recites both "an application server accessible by *a plurality of remote client terminals,*" and "a client authentication module configured to authenticate remote client terminals as editor terminals." The claim further includes a video editing module configured to "receive a cue point selection over the network from *one of the remote client terminals*," and "stream the portion of the video information to *the remote client terminal* over the public network in response to receiving the cue point selection." The disputed phrase then recites that the video editing module is configured to "provide edit interactivity with cue point information only when *the remote client terminal is authenticated by the client authentication module* as an editor terminal."

The claim further recites how the "edit interactivity" is configured to be carried out by the remote client terminal that was authenticated "by: [1] receiving a cue point editing command over the public network from one of the remote client terminals; and [2] modifying a portion of the cue point information at the video editing module in response to and according to the cue point editing command received over the public network from the client terminal." In other words, the remote

client terminal that is authenticated by the client authentication module performs the edit interactivity as an editor terminal. Accordingly, the Court finds that the claim language is unambiguous, is easily understandable by a jury, and should be given its plain and ordinary meaning. *Aventis Pharm., Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("There is a heavy presumption that claim terms are to be given their ordinary and customary meaning.").

Plaintiff contends that Defendants intend to argue that the claim requires that *all* remote client terminals must be authenticated. To the extent that Defendants attempt to make that argument, the Court rejects it. As discussed above, "the remote client terminal" at issue in this limitation refers back to the at least "one of the remote client terminals" referred to previously. Accordingly, the claim language does not require that *all* remote client terminals must be authenticated. Instead, it only requires providing edit interactivity to the remote client terminal authenticated as an editor terminal by the client authentication module.

Defendants argue that Plaintiff's construction would allow a remote client terminal to gain access to edit interactivity when (or after) some *other* remote client terminal has been authenticated as an editor terminal. (Dkt. No. 239 at 28). Specifically, Plaintiff argues that "the claim requires only that the module be configured to authenticate at least one of the plurality of remote client terminals that are capable of accessing the application server." (Dkt. No. 236 at 27). To the extent that Plaintiff attempts to make that argument, the Court rejects it because it contradicts the claim language and the specification. For example, the specification states "it may be desirable to allow free access to the VPE 118 so any client can watch video files, but limit access to the VEE 116 so only authorized clients may edit video files." '286 Patent at 10:24–26. Similarly, the specification states that "an authentication server may check the login information against a database to determine certain authorization-related attributes associated with that client." *Id.* at 12:3–6. This

is exactly what is recited in the claim.

Plaintiff argues that it is improper to "limit 'the claimed invention to preferred embodiments or specific examples in the specification.'" (Dkt. No. 243 at 17) (citing *Littelfuse*, 29 F.4th at 1381). Plaintiff contends that the specification expressly teaches that "it may be desirable to open access to the VEE." (Dkt. No. 243 at 17) (citing '286 Patent at 13:14–24; Dkt. No. 236-3 at ¶¶ 103-108). The Court finds that Plaintiff's cite to the specification is incomplete, because it states that even when it opens access to the VEE, "the method 300 may determine based on the login information whether the client has permission 304 to access all or part of the VEE." '286 Patent at 13:22–24. The specification further states that "[i]f the client does not have permission 304-1 to access the VEE or the desired files, the method 300 may terminate 332. If the client does have permission 304-2 to access the VEE or the desired files, the method 300 may continue to load the VEE 310." *Id.* at 13:34–38. Accordingly, the Court rejects Plaintiff's argument.

Plaintiff also argues that Claim 22 demonstrates that not all terminals must be authenticated. (Dkt. No. 236-4 at ¶ 106). Plaintiff contends that it modifies Claim 21 by reciting that "the application server is configured further to run, over the public network: a video playback module configured, without authentication of the remote client terminal by the client authentication module as an editor terminal." The Court agrees that not all terminal must be authenticated. The Court further notes that Claim 22 is directed to "a video playback module" that is configured to "direct playback of the video file."

Playing a video file with a video playback module is not the same as "edit interactivity" provided by video editing module. Accordingly, to the extent that a party argues that unauthenticated remote client terminal can perform the edit interactivity as an editor terminal, the

Court rejects that argument. Indeed, as Plaintiff's expert, Dr. Schaefer, states Claim 23 further modifies Claim 22 by requiring "[t]he system of claim 22, wherein the video playback module is further configured to provide access to edit interactivity via the video editing module *when the remote client terminal is authenticated by the client authentication module as an editor terminal*." (Dkt. No. 236-4 at ¶ 107).

Finally, the parties dispute whether the "remote client terminal" can be a server. (Dkt. No. 239 at 30). The Court finds that nothing prevents a "client terminal" from also functioning as a server. Indeed, Defendants themselves acknowledge that a component may function as a server for one purpose and a client for another. (Dkt. No. 236-9 at 4). This understanding is also supported by the *An Introduction to Client Server Computing* textbook. (Dkt. No. 236-3 at ¶ 56). It explains how "[a] single machine can be both a client and a server depending on the software configuration." (Dkt. No. 236-8 at 7). Similarly, as Dr. Schaefer explained, a POSITA would understand the specification confirms that "a server can operate on the 'client side'" of the recited public network. (Dkt. No. 236-3 at ¶¶ 105-106). In summary, the claims do not require that each side of the network comprise a single type of device (*i.e.*, server devices or client terminals); nor do they preclude a "server device" from being a "remote client terminal," so long as it communicates with a different "application server" on the other side of the public network. (Dkt. No. 243 at 9, n. 3).

**2. Court's Construction**

For the reasons set forth above, the phrase **"provide edit interactivity with cue point information only when the remote client terminal is authenticated by the client authentication module as an editor terminal"** is given its **plain and ordinary meaning**.

### F. "public network"

| Disputed Term | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|
| "public network" | "Internet or any network accessible to the public" | Plain meaning, i.e., "network accessible to the public" |

#### 1. Analysis

The term "public network" appears in Asserted Claim 21 of the '286 Patent. The only difference between the parties' constructions is further specifying the network as "Internet or any," as Plaintiff proposes.[8] Defendants argue that Plaintiff's expert, Dr. Schaefer, testified at his deposition that a public network is any network that is accessible to the public. (Dkt. No. 239 at 31) (citing Dkt. No. 239-9 at 54:17-55:14). In its reply, Plaintiff argues that Defendants omit that Dr. Schaefer's stated that "the patent talks about public network. It gives an example, I think, of the Internet." (Dkt. No. 243 at 18) (citing Dkt. No. 239-9 at 54:23-55:2). Plaintiff further argues that he also said that when "talking about a public network," we are "talking about things like the Internet." (Dkt. No. 243 at 18) (citing Dkt. No. 239-9 at 55:10-14). Defendants conspicuously omit this testimony from the language it quoted.

Plaintiff also contends that the intrinsic record repeatedly discloses that the public network includes "the Internet." (Dkt. No. 243 at 18). Plaintiff notes that Claim 11 recites "[t]he system of claim 1, wherein the network is the Internet." *Id.* Plaintiff further contends that during prosecution, the patentees distinguished a reference (Shibata) because it "does not appear to contemplate a server video editing and/or playback environment on a public network architecture, like the Internet." (Dkt. No. 243-3 at 12).

The Court agrees with Plaintiff. Defendants have not provided a reason for not including

[8] The parties' arguments for this disputed term can be found in Defendants' Responsive Claim Construction Brief (Dkt. No. 239 at 31-32); and Plaintiff's Reply Claim Construction Brief (Dkt. No. 243 at 18).

"Internet" in the construction. The specification discusses the rise of the Internet as expanding "the reach of advertising and has allowed for enhanced marketing capabilities at much lower cost." '286 Patent at 1:62–64. Similarly, the specification states "the Internet provides an inexpensive and efficient video distribution medium." *Id.* at 2:10–11. Likewise, the specification states that "[t]he application server 110 may be accessible via a network 130, like the Internet or any other public or private, wired or wireless network." *Id.* at 6:66–7:1; *see also*, *id.* at 24:44–45 ("In one example, the network 430 may comprise the Internet."). The parties agree that the claim term "the network" refers to "the public network," and Defendants have not articulated a reason why "Internet" should not be included in the construction. Accordingly, the Court adopts Plaintiff's construction, to the extent that it is necessary to resolve a claim construction dispute.

### 2. Court's Construction

For the reasons set forth above, the Court construes the term **"public network"** to mean **"Internet or any network accessible to the public."**

## VI. CONCLUSION

The Court adopts the constructions above for the disputed terms of the Asserted Patents. Furthermore, the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court. The references to the claim construction process should be limited to informing the jury of the constructions adopted by the Court.

**SIGNED this 10th day of July, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE